COMMONWEALTH of Pennsylvania, Appellee

v.

Scott A. SHAFFER, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 6, 2012.

Filed March 19, 2012.

Shawn M. Dorward, Harrisburg, for appellant.

Amber Lane, Assistant District Attorney, Gettysburg, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., PANELLA and STRASSBURGER, JJ.*

* Retired Senior Judge assigned to the Superior Court.

OPINION BY PANELLA, J.:

Appellant, Scott A. Shaffer, appeals from the judgment of sentence entered on June 2, 2011, in the Court of Common Pleas of Adams County. After careful review, we affirm.

On March 7, 2010, at approximately 2:16 a.m., Trooper James R. David of the Pennsylvania State Police (PSP) was on duty patrolling with his partner, Trooper Schrader, in the area of Bon–Ox Road. *See* N.T., Non–Jury Trial, 3/18/11, at 9. Trooper David effectuated a traffic stop of Shaffer's vehicle for erratic driving when he observed Shaffer's vehicle "cross the fog line with his passenger side tires four times and while—on one occasion, while he was negotiating a left-hand curve in the roadway, ... thought [Shaffer] was going to run off the roadway...." *Id.*, at 9. Trooper David "noticed that [Shaffer's] eyes were bloodshot and glassy" and that a strong odor of alcohol was emanating from his breath and person. *See id.*, at 10. Trooper David instructed Shaffer to exit his vehicle so he could administer field sobriety tests. *See id.*, at 11. Shaffer failed the field sobriety tests and Trooper David placed Shaffer under arrest. Shaffer was transported to Gettysburg Hospital for blood testing. Shaffer had a BAC of 0.15%.

Following a non-jury trial, the trial court convicted Shaffer of DUI–High Rate of Alcohol in violation of 75 PA. CONS.STAT. ANN. § 3802(b), and acquitted him of the remainder of the charges. Subsequent thereto, the trial court sentenced Shaffer on June 2, 2011, to the intermediate punishment program for a period of six (6) months, plus fines and costs. Shaffer filed post-sentence motions, which the trial court denied. This timely appeal followed.

On appeal, Shaffer raises the following issues for our review:

I. WHETHER THE DEFENDANT WAS DENIED HIS CONSTITU-TIONALLY PROTECTED AND GUARANTEED RIGHT TO CONFRONT ANY WITNESS BROUGHT AGAINST HIM WHEN THE COMMONWEALTH FAILED TO CALL AS A WITNESS THE PHLEBOTOMIST WHO WAS RESPONSIBLE FOR COLLECTING THE DEFENDANT'S BLOOD AND WHO WAS RESPONSIBLE FOR PACKAGING AND SUBMITTING THE BLOOD SPECIMEN TO THE PENNSYLVANIA STATE POLICE LABORATORY FOR FINAL ANALYSIS.

II. WHETHER THE TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY OF 75 PA. C.S.A. § 3802(b) BECAUSE SAID VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.

Appellant's Brief, at 6.

In his first issue raised on appeal, Shaffer alleges that the admission of the results of his BAC test violated his right of confrontation under the Sixth Amendment to the United States Constitution. *See* Appellant's Brief, at 11–17. Shaffer relies on the United States Supreme Court's holding in *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). In *Melendez–Diaz*, the Court held that lab reports admitted to establish a defendant's guilt constituted testimonial statements covered by the Confrontation Clause of the United States Constitution and that such reports were inadmissible unless the defendant had the opportunity to cross-examine the lab analyst at trial.

Here, Shaffer argues that pursuant to *Melendez–Diaz*, he should have been given the opportunity to confront the phlebotomist, Rachel McGlaughin, who was responsi-

ble for drawing Shaffer's blood at Gettysburg Hospital. We disagree.

At the time of the non-jury trial, the Commonwealth presented witness testimony from Trooper David and Christina Zurad, a forensic scientist and lab analyst for the Pennsylvania State Police. *See* N.T., Non–Jury Trial, 3/18/11.

Trooper David testified that he transported Shaffer to Gettysburg Hospital and once at the hospital, gave Shaffer his implied consent and *O'Connell*[1] warnings. *See id.,* at 15. Shaffer agreed to submit to the blood test. *See id.,* at 16. Trooper David was present at the time Shaffer's blood was drawn. *See id.* Specifically, Trooper David testified that, at approximately 2:50 a.m., Rachel McGlaughin, a lab technician, drew Shaffer's blood. *See id.* Shaffer's blood "was drawn into two tubes and packaged into little plastic container that [the PSP has], seal[ed] up, wrapped in a bag of—wrapped in a like a plastic bag" and then "tak[en] and ship[ed] up to the lab." *Id.,* at 16–17. Trooper David personally signed the seals and lab request form. *See id.,* at 17. Trooper David attested that Shaffer's blood sample was completely sealed and boxed up in his presence. *See id.,* at 17–18. The sample was then sent to the PSP laboratory in Harrisburg for analysis. *See id.,* at 18.

Additionally, Christina Zurad, a forensic scientist at the PSP Crime Lab in Harrisburg, testified that she has been employed with the PSP for five years and, during that time, has conducted hundreds of tests of blood to determine the alcohol content. *See id.,* at 50–52. She further explained the process utilized by the PSP lab to test the blood. *See id.,* at 52. Ms. Zurad testified that on March 9, 2010, the lab received a sealed package containing a sample of blood from Gettysburg Hospital belonging to Shaffer. *See id.,* at 53. Ms.

Zurad opened the sealed package, which contained "two gray-topped tubes of blood." *Id.,* at 54. According to Ms. Zurad, "both tubes were labeled with [their] lab number, which is a unique number that's given to the case when it comes in. One tube is placed back in the kit, which then is not to be opened and the other tube would be analyzed." *Id.* Ms. Zurad tested the one tube using a gas chromatograph after which the sample was resealed and placed back into the kit." *Id.* Ms. Zurad then stated that she prepared and signed a lab report, which contained her reading of Shaffer's blood alcohol content as "one hundred fifty thousandths of one gram percent or 0.150 percent." *Id.,* at 57. The lab report was then properly admitted into evidence after the proper foundation testimony was elicited from the preparer of the report, Ms. Zurad. *Id.,* at 58.

◾ Accordingly, based upon the testimony elicited at the time of trial, it is evident that the Commonwealth satisfied its requirements for prosecution in accordance with *Melendez–Diaz.* As noted above, *Melendez–Diaz* requires the Commonwealth to call the lab analyst as a witness rather than merely submitting a lab report, in lieu of oral testimony, to establish a defendant's guilt. *Melendez–Diaz* does not, as Shaffer would suggest, place an additional requirement upon the Commonwealth to call the phlebotomist who physically drew defendant's blood at the hospital. There was no report authored by the phlebotomist that the Commonwealth attempted to enter into evidence. The phlebotomist was merely an individual involved in the chain of custody of Shaffer's blood sample. *See Melendez–Diaz,* 557 U.S. at ——, 129 S.Ct. at 2532 n. 1 ("[W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody,

---

1. *Department of Transportation v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989).

authenticity of a sample, or accuracy of a testing device must appear in person as part of the prosecution's case.").

Here, Shaffer, by and through his defense counsel, had ample opportunity to effectively cross-examine/confront both witnesses presented against him by the Commonwealth. Most importantly, and central to Shaffer's claims herein on appeal, is the fact that defense counsel conducted a detailed cross-examination of Ms. Zurad regarding testing methods and the lab report prepared based upon her findings. *See id.,* at 57–69. As such, Shaffer's right to confrontation was clearly not violated.

Lastly, Shaffer argues that the trial court erred in finding him guilty of 75 Pa. Cons.Stat.Ann. § 3802(b) as the verdict was against the weight of the evidence. We disagree.

■■■ Shaffer's argument centers upon his assertion that the Commonwealth failed to produce the phlebotomist who drew Shaffer's blood. We remind Shaffer that

> [t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney,* 574 Pa. 435, 444, 832 A.2d 403, 409 (2003), *cert. denied,* 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004).

■■■ The verdict was not against the weight of the evidence in the present case. The Commonwealth presented the testimony of Christina Zurad, who tested Shaffer's blood and prepared a report based upon her test results. Moreover, Shaffer had the opportunity to cross-examine Ms. Zurad and importantly, Ms. Zurad's lab report indicating Shaffer's BAC to be 0.150% was admitted into evidence without objection. As such, the lab report was properly admitted and considered by the trial court as evidence of Shaffer's blood alcohol content. The trial court also found Ms. Zurad's testimony to be credible. Therefore, based upon the properly admitted lab report and Ms. Zurad's credible testimony regarding the testing procedures, the trial court found that Shaffer's blood alcohol content was 0.150 percent within two hours of driving in contravention of 75 Pa. Cons.Stat.Ann. § 3802(b). As such, Shaffer's conviction must stand.

Judgment of sentence affirmed. Jurisdiction relinquished.