J.S36038/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANGEL L. ECHEVARRIA, | : | |
| | : | |
| Appellant | : | No. 3350 EDA 2013 |

Appeal from the PCRA Order November 14, 2013
In the Court of Common Pleas of Northampton County
Criminal Division No(s).: CP-48-CR-0001248-2008

BEFORE: GANTMAN, P.J., JENKINS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED DECEMBER 04, 2014**

Appellant, Angel L. Echevarria, appeals from the order entered in the Northampton County Court of Common Pleas denying his first petition filed pursuant to Post Conviction Relief Act ("PCRA"). Appellant avers, in this second-degree murder case, that trial counsel was ineffective for failing to request a "corrupt and polluted source" jury instruction.[1] We affirm.

Previously, on direct appeal, this Court summarized the facts as

---

[*] Former Justice specially assigned to the Superior Court.

[1] The trial transcripts were not included in the certified record originally transmitted to this Court. However, upon informal inquiry by this Court, the PCRA court supplied them. We remind counsel, "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." **Commonwealth v. B.D.G.**, 959 A.2d 362, 372 (Pa. Super. 2008) (citations omitted).

follows.[2]  Appellant conspired with Julio Lopez, Hakim Wakeel, and a third man[3] ("the unknown man") to enter the home of James Garcia and steal a large sum of money, which Garcia intended to use to buy drugs.  Lopez's girlfriend, Susan Stohl ("Susan"), was Garcia's ex-wife and had informed Lopez about the money.

Shortly before 5:00 a.m. on July 26, 2007, Wakeel and the unknown man entered Garcia's property through the back yard; both were brandishing handguns.  Garcia did not know Wakeel or the unknown man.  N.T., 9/14/11, at 15.  Four people were sitting on the back yard deck: Garcia, Daniel Rivera—who would be the decedent in this case—Heather Byron, and Lydia George.  Garcia's two teenage sons and their friend were asleep inside the house.[4]  Wakeel and the unknown man

> threatened and demanded money from Garcia and forced all four victims into the house at gunpoint.  Once inside, Garcia was taken to the second floor . . . by one of the armed men, for the purpose of retrieving cash from his bedroom.  The other victims were forced to lie down on the floor downstairs.  After a brief time upstairs, Garcia was . . . brought downstairs, where he and Rivera were bound and threatened with death.  At that time, [Appellant] entered the house.  He and one of the armed

---

[2] *See Commonwealth v. Echevarria*, 123 EDA 2011 (unpublished memorandum) (Pa. Super. Nov. 23, 2011).

[3] The Superior Court affirmed the judgment of sentence of Wakeel at *Commonwealth v. Wakeel*, 2179 EDA 2009 (unpublished memorandum) (Pa. Super. Dec. 14, 2010).  The other "man was never identified." *Id.* at 2 n.1.

[4] Susan is the mother of these two sons.  *See* N.T., 9/13/11, at 12-13, 29.

men went upstairs to look for more money while the other armed man stayed downstairs, keeping watch over the other victims. Rivera soon got loose from his bindings and started to fight with the armed male who was downstairs. That man fired his weapon then, striking both Rivera and Garcia. The armed man who had gone upstairs came down at that time, firing at Rivera and . . . Garcia's dog, who was attempting to defend the home. The two armed men then fled the house through the door they had entered, and [Appellant] fled through an upstairs window. Garcia later recovered from his gunshot wounds at a nearby hospital, but Rivera was killed. The two female victims were not wounded.

During the trial, Julio Lopez testified regarding the conspiracy to rob James Garcia. He testified [to the following. Lopez] discussed with Susan Stohl a plan whereby he would arrange for someone to rob . . . Garcia of the drug money he was keeping at his home, and that all parties would split the money evenly. [H]e told [Susan] that he "knew somebody" who could do it for them. Lopez . . . had met [Appellant] through [Lopez's] brother-in-law, who works in Philadelphia fixing cars. He . . . met up with [Appellant] one night by chance in a bar in Philadelphia, and . . . they . . . discussed the possibility of robbing . . . Garcia. [Appellant] told him he "knew some people" who could carry out the robbery, and they discussed some of the details of what was to take place.

Lopez also testified that [Appellant] was present on the night of the robbery, that he came up to Bethlehem from Philadelphia, that they spoke, that [Appellant] rode in his car from a meet up point to the scene of the crimes, that the two men discussed further details of executing the robbery while they drove together, and that he gave [Appellant] a hat to wear during the course of the robbery. Importantly, Lopez also testified that while [Appellant] remained outside the house during the initial period of the robbery, he did enter the house while the robbery was in progress, and later fled through an upstairs window. On cross examination, Lopez admitted that he did not identify [Appellant] when initially interviewed by police regarding the incident.

In addition to Lopez, one other person identified [Appellant] at trial[:] Heather Byron, one of the female victims of the robbery. In her testimony, Ms. Byron stated that while all four victims were in the house with [the] two assailants, a third man entered the house. She . . . got "a pretty good look" at the man, but did waver in identifying [Appellant] as that man. She also admitted that she could not identify [Appellant] during either a photo lineup or an in person lineup prior to trial.

*Echevarria*, 123 EDA 2011 at 2-3 (quoting Trial Ct. Op., 4/11/11, at 13-16).

The case proceeded to a four-day jury trial on forty-two counts on September 13, 2010. The jury convicted Appellant of second-degree murder,[5] attempted murder,[6] robbery, and related offenses. On September 28, 2010, the court imposed a mandatory sentence of life imprisonment without parole.[7]

On direct appeal, this Court found no relief due on any of Appellant's seven issues. In pertinent part, it found Appellant waived his claim that the trial court erred in failing to give a "corrupt and polluted source" jury

---

[5] 18 Pa.C.S. § 2502(b).

[6] 18 Pa.C.S. §§ 901, 2501(a).

[7] 18 Pa.C.S. § 3701(a)(1)(i). Appellant was also found guilty of three counts of conspiracy, four counts of simple assault, two counts of aggravated assault, four counts of recklessly endangering another person, four counts of terroristic threats, four counts of unlawful restraint, burglary, theft by unlawful taking, cruelty to animals. 18 Pa.C.S. §§ 903(a), 2701(a)(3), 2702(a)(1), 2705, 2706(a)(1), 2902(a)(1), 3502(a), 3921, 5511(a)(2.1)(i). The court also imposed a consecutive sentence of 800 to 1,600 months.

instruction, where Appellant did not request such an instruction and did not object to the charge as given. *Id.* at 18. Thus, on November 23, 2011, this Court affirmed the judgment of sentence. The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on September 4, 2012.

On August 12, 2013, Appellant filed the underlying, timely, *pro se* first PCRA petition.[8] The PCRA court, who had also presided over trial, appointed counsel to represent him. Counsel filed a second PCRA petition and then an amended petition. The court held a hearing on September 24th, at which Appellant's trial counsel, Christopher Shipman, Esq., testified.[9] On November 14th, the court denied relief. Appellant took this timely appeal. He presents one issue for our review: whether the PCRA court erred in denying relief on his claim that trial counsel was ineffective for failing to request a "corrupt and polluted source" jury instruction.

For ease of disposition, we first set forth relevant law and the PCRA court's findings. "Our standard of review of the denial of a PCRA petition is limited to examining whether the court's determination is supported by the evidence of record and free of legal error. This Court grants great deference

---

[8] Appellant's judgment of sentence became final on December 3, 2012, which was the ninety-day deadline for filing a writ of *certiorari* with the United States Supreme Court. *See* 42 Pa.C.S. § 9545(b)(3); Sup.Ct.R. 13. Appellant then generally had one year, or until December 4, 2013, to file a PCRA petition. *See* 42 Pa.C.S. § 9545(b)(1). As stated above, the instant petition was filed on August 12, 2013.

[9] Julio Lopez also testified at the PCRA hearing.

to the findings of the PCRA court if the record contains any support for those findings." **Commonwealth v. Lane**, 81 A.3d 974, 977 (Pa. Super. 2013) (citations omitted), *appeal denied*, 92 A.3d 811 (Pa. 2014).

With respect to a claim of ineffective assistance of counsel, our Supreme Court has stated:

> Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a PCRA petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. **Strickland v. Washington**, 466 U.S. 668, . . . (1984). A petitioner establishes prejudice when he demonstrates 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Applying the **Strickland** performance and prejudice test, this Court has noted that a properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

**Commonwealth v. Smith**, 17 A.3d 873, 883 (Pa. 2011), *cert. denied*., 133 S.Ct. 24 (2012) (some citations omitted). "The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail." **Lane**, 81 A.3d at 978.

> [T]he standard charge for accomplice testimony[ is] commonly referred to as the corrupt and polluted source charge.[10 "I]n any case where an accomplice implicates

---

[10] The Suggested Standard Jury Instruction is:

the defendant, the judge should tell the jury that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution." . . . "If the evidence is sufficient to present a jury question with respect to whether the prosecution's witness was an accomplice, the defendant is entitled to an instruction as to the weight to be given to that witness's testimony."

*Smith*, 17 A.3d at 906 (citations omitted).

The "corrupt source" charge in particular is designed specifically to address situations where one accomplice testifies against the other to obtain favorable treatment. It directs the jury to view the testimony of an accomplice with disfavor and accept it only with care and caution.

*Id.* Finally,

"[t]he trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." There is error only when

---

First, you should view the testimony of an accomplice with disfavor because it comes from a corrupt and polluted source.

Second, you should examine the testimony of an accomplice closely and accept it only with care and caution.

Third, you should consider whether the testimony of an accomplice is supported, in whole or in part, by other evidence. Accomplice testimony is more dependable if supported by independent evidence. [However, even if there is no independent supporting evidence, you may still find the defendant guilty solely on the basis of an accomplice's testimony if, after using the special rules I just told you about, you are satisfied beyond a reasonable doubt that the accomplice testified truthfully and the defendant is guilty.]

Pa. SSJI (Crim) 4.01.

the trial court abuses its discretion or inaccurately states
the law.

*Id.*

In the instant matter, the PCRA court held Appellant established the first two prongs of an ineffectiveness claim. First, it found Appellant's claim that trial counsel failed to request the "corrupt and polluted source" charge had arguable merit. The court reasoned that Appellant was entitled to the charge with respect to both Lopez's and Susan's testimony, as it "clearly [met] the definition of accomplice testimony." PCRA Ct. Op., 11/14/13, at 6. Second, the PCRA court found trial counsel had no reasonable basis for not requesting the charge. At the PCRA hearing, trial counsel agreed that "a central issue [at trial] was Mr. Lopez's testimony, and his credibility and believability to the court." N.T. PCRA H'rg, 9/24/13, at 13-14. However, trial counsel did not recall why he did not request the "corrupt and polluted source" charge. *Id.* at 14. The PCRA court that in light of this testimony, "counsel's failure to request the instruction . . . cannot be objectively viewed as an informed choice that was reasonably designed to advance and protect [Appellant's] interests." PCRA Ct. Op. at 7.

However, the PCRA court held Appellant failed to establish prejudice— that but for counsel's error, there was a reasonable probability the outcome of his trial would have been different. *Id.* at 8. The court noted that Lopez and Susan "clearly testified that they too faced numerous charges in connection with the events in question," and that trial counsel "thorough[ly]

cross-examin[ed] on the issue of both witnesses' motives to testify against [Appellant] and Lopez's prior inconsistent statements." *Id.* at 9. The court also stated that at trial, it had "instruct[ed] the jury with respect to the credibility and interest of the witnesses, as well as the credibility of trial testimony that does not square with a witness's statements on a prior occasion." *Id.* at 8. It cited its instructions, in pertinent part:

> The following are some of the factors that you may and should consider when judging credibility and deciding whether or not to believe testimony: [ . . . ] Did the witness have any interest in the outcome of the case, bias, prejudice, or other motive that might affect his or her testimony? [N.T., 9/16/10, at 8.]
>
> *         *         *
>
> You have heard evidence that certain witnesses, namely [ . . . ] Julio Lopez [ . . . .] made a statement on an earlier occasion that was inconsistent with his present testimony. [ . . . ] you may, if you choose, regard this evidence as proof of the truth of anything that the witness said in the earlier statements. [*Id.* at 14-15.]

Trial Ct. Op. at 8-9. The court reasoned "that the charge, viewed as a whole, was appropriate and fair to" Appellant. PCRA Ct. Op. at 9. Furthermore, the PCRA court found

> the trial record as a whole reveals a host of additional evidence, aside from the testimony of [Susan] and Lopez, that implicates [Appellant] in the crimes . . . namely: [victim Lydia George's testimony] that an Hispanic male was in the house during the incident, and that he was referred to by a name that sounded like "Chee Chee" by another of the criminal actors[, N.T., 9/14/10, at 140-43]; (2) [Appellant's friends, Edwin Matos' and Jose Ortiz' testimony] that [Appellant] is known by the street name Chucho[, N.T., 9/15/10, at 64]; (3) [Jose Ortiz's testimony

that Appellant] did not stay at Jose Ortiz's house in Bethlehem on the night of the incident , contrary to [Appellant's] statement to police[, *id.* at 116-17]; (4) [victim Heather Byron's identification of Appellant] in the courtroom[, N.T., 9/13/10, at 96]; and, most importantly, (5) [Detective Mark DiLuzio's testimony[:] (a) that the mobile phone using number (267) 882-8023 was identified by police as a number that had been in contact with the phones of Julio Lopez and convicted co-defendant Hakim Wakeel numerous times at and around the time of the incident in question[, N.T. 9/15/10, at 71]; (b) that Detective DiLuzio called that number in connection with his investigation on February 12, 2008[, approximately six and half months after the incident,] at which time [Appellant] answered and identified himself, acknowledging that he is known by the street name Chucho[, N.T., 9/14/10, at 177; N.T., 9/15/10, at 70]; (c) that mobile phone records indicated that the [above phone] was located in Philadelphia shortly prior to the events in question[,] travelled northward on the Pennsylvania turnpike to Bethlehem just prior to the events in question[,] was present in the neighborhood of the location of the crimes at the time they were committed, and . . . .travelled southward on the Pennsylvania turnpike back to Philadelphia shortly after the events in question[, N.T., 9/15/10, at 72-83]; and (d) that at the time of his arrest, [Appellant] acknowledged knowing Julio Lopez and Hakim Wakeel and stated numerous times, "You can't put me in that house." [*Id.* at 86.]

*Id.* at 9-11. The court reasoned that in light "of all of this evidence, set aside from the testimony of" Susan and Lopez, "there is not a reasonable probability that the outcome of [Appellant's] trial would have been different but for the error of trial counsel." *Id.* at 11.

We now review Appellant's arguments in the instant appeal. He maintains the outcome of his trial would have been different had counsel requested, and the court given, the "corrupt and polluted" source

instruction. Appellant asserts that the instructions cited by the PCRA, concerning the witnesses' credibility and interest in testifying, "fall well short of the force and protections offered defendant[s] under the corrupt and polluted source instruction." Appellant's Brief at 11. He adds that in this case, there were two accomplices testifying against him, "in essence giving the Commonwealth a double-team of accomplice testimony without the jury given the corrupt and polluted source instruction." *Id.* at 12. We find no relief is due.

In *Smith*, 17 A.3d 873, the defendant was charged with the shooting death of the victim. *Id.* at 880. His two co-conspirators testified against him, but at the time of trial, had not yet been sentenced. *Id.* at 880, 904-05.

> Trial counsel requested a "corrupt and polluted source" charge with respect to these witnesses.[ ] The trial court declined to give the standard charge, however, and instead instructed the jury as follows:
>
> > [The two witnesses] are . . . unsentenced co-conspirators allegedly in the conspiracy with this defendant and they have testified on behalf of the Commonwealth. In your deliberations you may bear that in mind in assessing the credibility of their testimony as witnesses.
>
> Counsel objected to this charge as invalid, and the trial court overruled the objection.

*Id.* at 905 (citation to record omitted). The defendant was convicted by a jury of first-degree murder and related offenses and sentenced to death. *Id.* at 881.

Subsequently, the defendant raised a PCRA claim that trial "counsel was ineffective for failing to challenge on appeal the trial court's failure to give a proper corrupt and polluted source instruction."[11]  *Id.* at 905 (footnote omitted).  The PCRA court denied relief, holding the defendant "could not demonstrate that the charge would have changed the outcome of the trial."  *Id.*  The court reasoned that when "examining the charge as a whole, rather than the isolated portion [the defendant] relied on, . . . the trial court made clear in other portions of the jury charge that [the two witnesses] were co-conspirators, and [the court] explained how to evaluate their credibility by emphasizing that the jury should consider each witness's motive and whether the witness was biased or interested in the outcome of the case." *Id.* at 905-06.

On appeal, this Court agreed with the PCRA court that no relief was due.  *Id.* at 906-07.  Commonwealth questioned the two witnesses "about their plea agreements, which reduced the charges of first-degree murder to third-degree murder and conspiracy."  *Id.* at 907.  The jury heard testimony specifically that "both witnesses had agreed to plead guilty . . . in exchange for their testimony against" the defendant.  *Id.*  The witnesses also testified that they believed their sentences would be ten to twenty years and five to twenty-years, respectively, and that one witness's "unrelated aggravated

---

[11] The defendant "was represented by trial counsel on direct appeal." ***Smith***, 17 A.3d at 881.

assault charge would be dismissed because of his cooperation with the Commonwealth[.]" *Id.* This Court held,

> In light of the totality of the jury charge and the evidence produced regarding [the co-conpsirators'] interest in testifying for the Commonwealth, [the defendant] cannot prevail on his ineffectiveness claim. He simply has not demonstrated that he would be able to prove that if counsel had challenged the jury charge on direct appeal, the result of his appeal would have been different.

*Id.*

We reiterate that the "corrupt and polluted source" instruction "is designed specifically to address situations where one accomplice testifies against the other **to obtain favorable treatment**." *Smith*, 17 A.3d at 906 (emphasis added). In the instant matter, both Susan and Lopez repeatedly denied they were promised anything in exchange for their testimony against Appellant.[12] N.T., 9/13/11, at 30, 47-48, 50; N.T., 9/14/11, at 43. Susan also stated that she did not know she had to testify in this case "until [she] got [a] letter in the mail." N.T., 9/13/11, at 48. On cross-examination, Appellant's counsel stated that the incident occurred more than three years earlier and asked Lopez why he still had not gone to trial. *Id.* at 69. Lopez replied that he did not know, and again denied that he had something to gain from testifying. *Id.* at 69-70. The credibility of this testimony was for the jury to determine. *See Commonwealth v. Shaffer*, 40 A.3d 1250,

---

[12] We note that on direct examination, Susan testified her criminal charges were still pending, but on cross-examination, stated she had pleaded guilty to conspiracy to commit robbery. N.T., 9/13/11, at 30, 46-47.

1253 (Pa. Super. 2012).

Although the trial court did not give the "corrupt and polluted source" instruction, we hold it properly instructed the jury that in judging a witness' credibility and deciding whether to believe testimony, it should consider, in pertinent part, whether "the witness has any interest in the outcome of the case, bias, prejudice, or other motive that might affect his or her testimony" and whether the witness' testimony "square[d] with the other evidence in the case including the testimony of other witnesses." N.T., 9/16/10, at 8. The court also properly instructed the jurors that they were "the sole judges of the credibility of the witnesses and their testimony" and were free "to believe all, or part, or none of this testimony." *Id.* at 7. *See Shaffer*, 40 A.3d at 1253.

Finally, we agree with the PCRA court that the Commonwealth's case was not based solely on Susan's and Lopez's testimony, and instead it presented various pieces of evidence to support its charges against Appellant. *See* Trial Ct. Op. at 9-11. On appeal, Appellant does not address, let alone dispute, the other evidence. In light of all the foregoing and the *Smith* decision, we decline to disturb the PCRA court's determination that Appellant has failed to establish the outcome of his trial would have been different with a "corrupted and polluted source" instruction.

We now consider Appellant's reliance on Justice Cappy's opinion in *Commonwealth v. Derk*, 719 A.2d 262 (Pa. 1998). In that case, the

Pennsylvania Supreme Court was evenly divided, and thus the Court affirmed the Superior Court. **Derk**, 719 A.2d at 262. Justice Cappy authored an opinion, joined by two justices, in support of **reversing**. **Id.** at 267-73. Because it did not garner a majority, Justice Cappy's decision is not precedential.[13]

Finding no merit in Appellant's arguments, we affirm the order denying his PCRA petition.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/4/2014</u>

---

[13] **See Commonwealth v. A.R.**, 80 A.3d 1180, 1183 (Pa. 2013) ("Plurality opinions, by definition, establish no binding precedent for future cases.").