J. S53041/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                                      :             PENNSYLVANIA

                          v.             :

                                  :

CHARLES GIGGETTS,           :         No. 2773 EDA 2016

                                  :

                     Appellant      : 


Appeal from the Judgment of Sentence, May 13, 2016,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0007804-2013


BEFORE:  BENDER, P.J.E., OLSON, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED SEPTEMBER 11, 2017**

Charles Giggetts appeals from the May 13, 2016 judgment of sentence imposed after a jury found him guilty of aggravated assault, robbery, and robbery of a motor vehicle.[1]  For the following reasons, we vacate the judgment of sentence and remand this matter for resentencing; appellant's convictions are affirmed in all other respects.

The trial court summarized the relevant facts of this case as follows:

> On April 18, 2013, at approximately 6:45 a.m., Complainant Lisa McLawler stopped to get gasoline at a Sunoco Gas Station on the corner of City Avenue and Conshohocken State Road in Philadelphia.  As she was filling her 2010 Chrysler Sebring with gasoline, she heard her car door close.  She never heard it open.  When she turned around, a man was in her vehicle.  She started screaming for him to get out.  In a statement to police, she described the

---

[1] 18 Pa.C.S.A. §§ 2702, 3701, and 3702, respectively.

assailant as a black man, dark skin, facial hair, full beard, he appeared to be wearing a hoodie or some type of sweatshirt. She testified that he was an "older gentleman," not the teenager-type.

The Complainant had left her keys in the car and the driver's side window down. She reached into the car through the window and started blaring the horn to draw attention. The man sped off in the vehicle as she was still reaching into it. As he did, he dragged her a lengthy distance, running over her right foot, causing her to propel forward and slam face first onto the pavement of the Sunoco station. She testified that she sustained multiple sprains and severe bruising, a large cut on her foot, and burns down the right side of her body from her breast to her hip. She had a hematoma the size of a tennis ball on her left hip that did not heal for approximately three months. As a result of this incident, she has chronic back pain and is no longer able to wear high heels.

The Complainant had her iPad, cell phone, and handbag containing multiple credit cards in her vehicle. She immediately put a hold on all of her accounts within the first hour of the incident. One of her credit cards was used and another transaction was attempted, but did not go through because of the hold. She received a call that her handbag was at the Upper Darby Post Office approximately one week after the incident. Her identification cards and debit cards were no longer in her handbag.

Corporal Kenneth Wilson, Pennsylvania State Police, recovered the stolen vehicle within thirty minutes of the carjacking at 7:15 a.m., abandoned on Lenape Road in Philadelphia, approximately a quarter-mile from the Sunoco Gas Station.

Trooper Andrew Martin, Pennsylvania State Police, responded to the Sunoco Gas Station and obtained video footage of the incident from the station. A description of the suspect was generated

based on the video: black, non-Hispanic male, approximately 6 feet, wearing a gray hoodie, blue jeans, and distinct sneakers with red trim, red tongue, and red laces. The suspect walked with a gait, i.e. he would swing his right foot as he walked with his left.

Trooper Martin was informed of an unauthorized use of the Complainant's credit card approximately thirty to forty-five minutes after the carjacking at a Citgo Gas Station at 4626 Lancaster Avenue. He provided the attendee with the credit card information and obtained a video of the person who attempted to use the card. The video was played for the jury. A man fitting the description of the assailant is seen at the pump where the credit card was used. He was driving a silver Hyundai Santa Fe with a "distinctive rack on the top." Records showed that [appellant] was the owner of that vehicle.

Trooper Michael Clarke was off-duty at the same Citgo Gas Station at 7:00 p.m. on April 19, 2013, the day after the incident, when he observed a man matching the description of the assailant, identified as [appellant], in a silver Hyundai Santa Fe with a distinctive roof rack. He had seen the videos from the Sunoco Gas Station where the carjacking occurred and the Citgo Gas Station where the Complainant's credit card was used when he was on-duty earlier that day.

Trooper Clarke approached [appellant]. When he did, [appellant] stated he had "cards," "[$]10 to $20 to fill your tank up." Trooper Clarke told [appellant] he was going to the ATM and contacted his supervisor. He observed [appellant] deal with five or six other people and fill up their tanks with credit cards in exchange for cash as he waited for officers to arrive.

Trooper Christopher Holdeman responded to the Citgo based on the tip from Trooper Clarke. He surveilled the Hyundai Santa Fe for two minutes.

The vehicle moved from the front of the gas station around the corner. The driver, later identified as [appellant], exited the vehicle and started walking toward the convenience store at the station. [Appellant] was wearing the same black shoes with red shoelaces visible in the video of the carjacking.

Trooper Holdeman exited his vehicle and identified himself. [Appellant] turned and ran westbound through the parking lot of the gas station toward an alley. After a brief chase, [appellant] was apprehended. A number of stolen identification cards and credit cards were recovered from [appellant's] person. [Complainant's] identification cards and credit cards, including the TD Bank card used at the Citgo Gas Station on April 18, 2013, were recovered in the center console of [appellant's] Hyundai Santa Fe.

. . . .

John Milo, Forensic DNA Scientist for the Pennsylvania State Police, testified that the following swabs were taken from the vehicle: two swabs of the steering wheel, one swab of the rear-view mirror, one swab of the inside door latch, one swab of the door latch, one swab of the driver's seat adjustment bar, and one swab of the gear shifter. He was able to obtain viable DNA from the top half and bottom half of the steering wheel.

The DNA profile obtained from the swab of the top of the steering wheel was a mixture of three individuals. A major component consisted of two individuals. The DNA mixture profile was 480 trillion times more likely to occur under the scenario that it is a mixture of DNA originating from [appellant], Complainant [] and one random, unrelated person as opposed to the scenario that it originated from a mixture of DNA from two random, unrelated people in the African-American population; 200 quadrillion times more likely to occur under the scenario that it is a mixture of DNA originating from [appellant], the Complainant, and one random, unrelated person as

- 4 -

> opposed to the scenario that it originated from a mixture of DNA from two random, unrelated people in the Caucasian population; and 26 quadrillion times more likely to occur under the scenario that it is a mixture of DNA originating from [appellant], the Complainant, and one random, unrelated person as opposed to the scenario that it originated from a mixture of DNA from two random, unrelated people in the Hispanic population.

Trial court opinion, 11/7/16 at 1-5 (citations to notes of testimony omitted; quotation marks in original).

Appellant was subsequently arrested and charged with multiple crimes in connection with this incident. On March 15, 2016, appellant proceeded to a jury trial before the Honorable Rose Marie DeFino-Nastasi. The jury found appellant guilty of aggravated assault, robbery, and robbery of a motor vehicle on March 18, 2016. On May 13, 2016, the trial court sentenced appellant to 15 to 30 years' imprisonment for robbery and 10 years' probation for aggravated assault. The trial court found that appellant's robbery of a motor vehicle conviction merged with robbery for sentencing purposes. (Sentencing order, 5/13/16; certified record at no. 38.) On May 19, 2016, appellant filed a post-sentence motion challenging, *inter alia*, the weight of the evidence. Thereafter, on May 23, 2016, appellant filed a post-sentence motion for reconsideration of his sentence.

The trial court denied appellant's motions on August 1, 2016. This timely appeal followed on August 30, 2016.[2]

Appellant raises the following issues for our review:

> A. [WHETHER] THE TRIAL COURT ERRED WHEN IT FOUND APPELLANT [] GUILTY OF AGGRAVATED ASSAULT, ROBBERY AND ROBBERY OF A MOTOR VEHICLE AS THERE WAS INSUFFICIENT EVIDENCE TO PROVE THESE CRIMES BEYOND A REASONABLE DOUBT[?]
>
> B. [WHETHER] THE TRIAL COURT ERRED WHEN IT FOUND APPELLANT [] GUILTY OF AGGRAVATED ASSAULT, ROBBERY AND ROBBERY OF A MOTOR VEHICLE, AS THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE[?]
>
> C. [WHETHER] THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT [] TO A TERM OF INCARCERATION WHICH WAS MANIFESTLY EXCESSIVE, AS IT DEPARTED FROM THE PENNSYLVANIA SENTENCING GUIDELINES AND WAS IN EXCESS OF THE MANDATORY MINIMUM SENTENCE[?]

Appellant's brief at 2.[3]

---

[2] The record reflects that on September 1, 2016, the trial court ordered appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b), within 30 days. Appellant filed a timely Rule 1925(b) statement on September 15, 2016, and supplemental statements on September 21 and 30, 2016. Thereafter, on November 7, 2016, the trial court filed its Rule 1925(a) opinion.

[3] For the ease of our discussion, we have elected to address appellant's claims in a slightly different order than presented in his brief.

We begin by addressing appellant's claim that he was sentenced beyond the statutory maximum for the crime of robbery, which implicates the legality of his sentence. (**See** appellant's brief at 20.) "The determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary." **Commonwealth v. Stradley**, 50 A.3d 769, 772 (Pa.Super. 2012) (citation omitted). Instantly, both the Commonwealth and the trial court concede that this case should be remanded for resentencing because the sentence imposed for robbery was beyond the statutory maximum. (Commonwealth's brief at 13; **see also** trial court opinion, 11/7/16 at 10.) We agree.

The record reflects that appellant was previously convicted of third-degree murder and was subject to mandatory minimum sentencing provisions as a second-strike offender. **See** 42 Pa.C.S.A. § 9714. As noted, the trial court sentenced appellant to 15 to 30 years' imprisonment for robbery, which clearly exceeds the statutory maximum of 20 years' imprisonment for a first-degree felony. **See** 18 Pa.C.S.A. § 1103(1). The trial court acknowledged the excessive nature of appellant's sentence in its November 7, 2016 opinion, noting that it mistakenly believed that appellant's robbery of a motor vehicle conviction merged with his robbery conviction and that it "intended to sentence [appellant] to an **aggregate** sentence of fifteen (15) to thirty (30) years plus ten (10) years[']

probation." (Trial court opinion, 11/7/16 at 1 n.1 (emphasis added).) Accordingly, we vacate appellant's May 13, 2016 judgment of sentence and remand this matter for resentencing.

Appellant next argues that there was insufficient evidence to sustain his convictions for aggravated assault, robbery, and robbery of a motor vehicle. (Appellant's brief at 14.) We disagree.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Thomas***, 988 A.2d 669, 670 (Pa.Super. 2009) (citations omitted), ***appeal denied***, 4 A.3d 1054 (Pa. 2010).

A person will be found guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). Serious bodily injury is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or

organ." 18 Pa.C.S.A. § 2301. A person will be found guilty of robbery "if, in the course of committing a theft, he . . . inflicts serious bodily injury upon another[.]" 18 Pa.C.S.A. § 3701(a)(1)(i). Likewise, a person will be found guilty of robbery of a motor vehicle, a felony of the first degree, "if he steals or takes a motor vehicle from another person in the presence of that person or any other person in lawful possession of the motor vehicle." 18 Pa.C.S.A. § 3702(a).

Viewing the evidence in the light most favorable to the Commonwealth, the verdict winner, we find that there is overwhelming evidence to support appellant's convictions in this matter. The evidence introduced at trial established that on the morning of April 18, 2013, appellant carjacked the victim as she was pumping gas and proceeded to drag her body a substantial distance across the parking lot when she tried to intervene. (Notes of testimony, 3/16/16 at 36-38, 52-53.) The record reflects that the victim suffered substantial bodily injuries, including multiple sprains and a tennis-ball-sized hematoma on her left hip. (*Id.* at 38-42.) At trial, the Commonwealth introduced video surveillance of the incident, which depicted an individual matching appellant's age and description, wearing distinctive black-and-red shoes, and walking with a notable gait. (*Id.* at 71-72, 78-81.) A second video introduced at trial placed appellant at a second gas station approximately 45 minutes later using one of the victim's credit cards. (*Id.* at 83-94.) The record further reflects that appellant was

apprehended the following day, wearing the identical shoes as those seen in the first video and in possession of the victim's identification and credit cards. (*Id.* at 202-213.) Subsequent tests determined that appellant's DNA matched DNA found on the victim's steering wheel. (*Id.* at 96-98, 149-162.) Based on the foregoing, we find that appellant's claim that there was insufficient evidence to sustain his convictions for aggravated assault, robbery, and robbery of a motor vehicle must fail.

In his final claim, appellant argues that the verdict was against the weight of the evidence because "[the victim] had no idea whatsoever who assaulted her and robbed her of her motor vehicle." (Appellant's brief at 17.) "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Galvin*, 985 A.2d 783, 793 (Pa. 2009) (citation omitted), *cert. denied*, 559 U.S. 1051 (2010).

> [W]here the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Shaffer*, 40 A.3d 1250, 1253 (Pa.Super. 2012) (citation omitted).

Our supreme court has long recognized that,

> [b]ecause the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the

findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

**Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (citations and emphasis omitted).

Instantly, we discern no abuse of discretion on the part of the trial court in rejecting appellant's weight claim. (**See** trial court opinion, 11/7/16 at 9-10.) "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Commonwealth v. Andrulewicz**, 911 A.2d 162, 165 (Pa.Super. 2006) (citation omitted), **appeal denied**, 926 A.2d 972 (Pa.

2007). Here, the jury evidently found that the video surveillance recordings, DNA evidence, and the fact that the victim's property was discovered in appellant's possession weighed heavily in favor of its determination that appellant was the person who committed the offenses in question, and elected not to believe appellant's version of the events. We are precluded from reweighing the evidence and substituting our judgment for that of the fact-finder. **Clay**, 64 A.3d at 1055.

Based on the foregoing, we vacate the May 13, 2016 judgment of sentence and remand this matter for resentencing. Appellant's convictions are affirmed in all other respects.

Judgment of sentence vacated. Case remanded for resentencing. Convictions affirmed in all other respects. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2017