J-S06041-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
    :        PENNSYLVANIA
    :
       v.    :
    :
    :
    :
SEAN MICHAEL ROBERTS    :
    :
    Appellant    :   No. 1122 MDA 2022

Appeal from the Judgment of Sentence Entered June 17, 2022
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0002611-2020

BEFORE:   STABILE, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:         **FILED MARCH 30, 2023**

Sean Michael Roberts appeals from the June 17, 2022 judgment of sentence of life imprisonment without the possibility of parole imposed after a jury found him guilty of first-degree murder.[1]  After careful review, we affirm the judgement of sentence.

The trial court summarized the relevant facts of this case as follows:

> In the predawn hours of October 15, 2020, the Carlisle Borough Police Department responded to a 9-1-1 call reporting a homicide at 169 and ½ East High Street, Carlisle, Cumberland County. The caller, later identified as Appellant, reported that he had murdered Jodi Sivak (hereinafter "Victim"), by stabbing her in the neck.  The police quickly responded to the call, taking Appellant into custody, and securing the scene of the crime.  Immediately inside the front door of the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502(a).

property the police discovered Victim, who was pronounced dead at the scene due to multiple stab wounds to the head and neck. Clearly visible was a trail of blood leading from Victim's body to the first-floor kitchen where the murder weapon, a folding knife, was recovered from the sink. Also visible was a blood trail leading to the second-floor bathroom, where Appellant's bloody clothes were located next to the shower. Appellant also had a bandaged wound on his hand, which appeared to have been a result of either Victim's attempt at self-defense, or Appellant cutting himself while struggling with Victim for control of the knife.

After being detained at the scene, Appellant was transported to the Carlisle Police Department, where he gave a voluntary interview. In that interview, Appellant described that he had flown out from Massachusetts to spend a week with Victim, a previous girlfriend of his. He stated that they had spent a pleasant time together, and that he was originally going to fly home on October 15th. Appellant went on to describe that, on the night of the crime, he and Victim had been drinking whiskey earlier in the night, and that a neighbor had provided some "Amish weed" for the pair to smoke. However, Appellant flatly stated during the interview that at the time of the stabbing he was not impaired or intoxicated to the point that he was out of control of his actions, and he had a clear recollection of having an argument with Victim before stabbing her. Importantly, during the interview Appellant stated with respect to his alcohol consumption being a factor in the murder, "Yeah I don't, I don't think that had anything to do with it, but I mean, whatever, lawyers, whatever is gonna try to say otherwise, but I don't think it had anything to do with it." In fact, the recorded interview demonstrated that Appellant was both candid regarding his actions and fully cooperative with the police in their initial investigation of the murder.

Notably, Appellant recalled that he grabbed the knife and repeatedly stabbed Victim, and that he attempted to cover her mouth during the attack to prevent her

from screaming. After killing Victim, Appellant walked
to the first-floor kitchen to wash his hands and deposit
the knife in the sink. He stated that he then went to
the second-floor bathroom to take a shower, dress his
wound, and change his clothes, before taking a nap
and then making the 9-1-1 phone call which
summoned the police to his location. During that 9-
1-1 call, Appellant informed the operator that he
intended to peacefully surrender, and that he was not
armed.

Trial court opinion, 10/4/22 at 1-4 (footnotes omitted).

Appellant was subsequently charged with first-degree murder and
proceeded to a jury trial on April 11, 2022. Following a three-day jury trial,
the trial court found Appellant guilty of first-degree murder. As noted,
Appellant was sentenced to life imprisonment without the possibility of parole
on June 17, 2022. Appellant filed a post-sentence motion which was denied
by the trial court following a hearing on July 14, 2022. This timely appeal
followed on August 9, 2022.[2]

Appellant raises the following issues for our review:

> I.      Was the conviction against the weight of the
>         evidence such that it shocked one's sense of
>         justice based on the evidence of [Appellant's]
>         intoxication presented during trial and the
>         Commonwealth's failure to prove that he acted
>         with the specific intent to kill?
>
> II.     Based on the evidence of [Appellant's]
>         intoxication presented during trial, did the trial
>         court err in failing to give the jury instruction for
>         voluntary intoxication or drugged condition as

---

[2] Appellant and the trial court have complied with Pa.R.A.P. 1925.

defense to first-degree murder, as requested by counsel?

Appellant's brief at 5 (extraneous capitalization omitted).

Appellant first argues that the verdict was against the weight of the evidence because "it shocked one's sense of justice based on the evidence of [his] intoxication" and the Commonwealth's purported "failure to prove [his] specific intent to kill[.]" Appellant's brief at 10. We disagree.

This Court has recognized that "a true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Miller*, 172 A.3d 632, 643 (Pa.Super. 2017) (citation omitted), *appeal denied*, 183 A.3d 970 (Pa. 2018). "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Galvin*, 985 A.2d 783, 793 (Pa. 2009) (citation omitted), *cert. denied*, 559 U.S. 1051 (2010).

> [W]here the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Shaffer*, 40 A.3d 1250, 1253 (Pa.Super. 2012) (citation omitted).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when

> reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations and emphasis omitted).

Upon review, we find that the trial court properly exercised its discretion in concluding that the jury's verdict was not against the weight of the evidence. **See** trial court opinion, 10/4/22 at 5-7. "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa.Super. 2006) (citation omitted), *appeal denied*, 926 A.2d 972 (Pa. 2007).

- 5 -

Here, the jury heard testimony from multiple witnesses that Appellant stabbed the victim nine times in her neck and head area, resulting in her death. **See** notes of testimony, 4/12/22 at 183-196, 208-210 (Dr. Wayne Ross); 236-238, 244-246 (Robert Johnson). The jury also had the benefit of a video recording of Appellant's interview with the police in the immediate aftermath of the murder, wherein he provided a detailed timeline the murder and expressly stated that he was not intoxicated to the point where he did not know what he was doing. **See** Commonwealth's Exhibit No. 10 – Recorded Interview; notes of testimony, 4/11/22 at 127-128. The jury clearly found the testimony and evidence presented at trial credible and elected not to believe Appellant's subsequent version of the events. We are precluded from reweighing the evidence and substituting our judgment for that of the factfinder. **Clay**, 64 A.3d at 1055. Accordingly, Appellant's weight claim must fail.

Appellant next argues that the trial court abused its discretion by failing to charge the jury with an "instruction for voluntary intoxication or drugged condition as a defense to first-degree murder[.]"[3] Appellant's brief at 14. We disagree.

The standard of review for a trial court's decision to refuse a diminished capacity jury instruction based on voluntary intoxication is an abuse of

_____

[3] This defense is also known as "diminished capacity."

discretion.  ***Commonwealth v. Clemons***, 200 A.3d 441, 465 (Pa. 2019),

***cert. denied***, ___ U.S. ___, 140 S.Ct. 176 (2019).  This Court has stated:

> Our standard of review when considering the denial of jury instructions is one of deference — an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law. Further, the trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

***Commonwealth v. Green***, 273 A.3d 1080, 1084 (Pa.Super. 2022) (citations,

internal quotation marks, and brackets omitted), ***appeal denied***, ___ A.3d

___, 2022 WL 17662326 (Pa. 2022).

Our Supreme Court has examined when a jury must be provided a

voluntary intoxication/diminished capacity instruction in ***Commonwealth v.***

***Padilla***, 80 A.3d 1238 (Pa. 2013), ***cert. denied***, 573 U.S. 907 (2014).

***Padilla*** involved a defendant who argued that his convictions for first-degree

murder should be vacated because the trial court erred when it instructed the

jury that there was no evidence of diminished capacity due to his ingestion of

alcohol and/or drugs.  ***Id.*** at 1263.  The ***Padilla*** Court held:

> A defense of diminished capacity negates the element of specific intent, and thus mitigates first-degree murder to third-degree murder.  The mere fact of voluntary intoxication does not give rise to a diminished capacity defense. Rather, to prove diminished capacity due to voluntary intoxication, a defendant must show that he was overwhelmed to the point of losing his faculties and sensibilities.  Evidence that the defendant lacked the ability to control his or her actions or acted impulsively is irrelevant to

specific intent to kill, and thus is not admissible to support a diminished capacity defense.

This Court has previously made clear that **a jury instruction regarding diminished capacity due to voluntary intoxication is justified only when the record contains evidence that the accused was intoxicated to the point of losing his or her faculties or sensibilities.** Evidence that the accused ingested alcohol or other intoxicating drug — without more — does not warrant a voluntary intoxication instruction.

*Id.* (citations omitted; emphasis added).

Upon review, we find no basis to conclude that the trial court abused its discretion by denying Appellant's requested jury instruction on voluntary intoxication. The record reveals no evidentiary basis that Appellant was sufficiently intoxicated during his murder of the victim to warrant such an instruction. On the contrary, Appellant's own admissions during his video interview with police immediately following the murder belie his claim that he was intoxicated to the point of having lost his faculties or sensibilities.

As stated by the trial court,

Appellant provided a detailed walkthrough of his actions from the time he first stabbed Victim until he summoned the police and surrendered himself into their custody. Further, Appellant himself discounted his intoxication during the interview, stating that while his attorneys might attempt to argue that he was too intoxicated to know what he was doing, that was not the case. Appellant's actions following the murder through his confession were calm and calculated, and reflected a clear recollection of events as well as a clear thinking pattern. For example, Appellant stayed on the line with the 9-1-1 dispatcher, so she could ensure the police knew that he was not armed and

- 8 -

> thus they would not find him to be a threat. At no time in Appellant's actions or presentation in the video did he act as though he was even slightly intoxicated.

Trial court opinion, 10/4/22 at 8-9.

This Court has long recognized that there is no right to have any particular form of instruction given; it is enough that the charge "clearly and accurately characterize relevant law." **Commonwealth v. Akhmedov**, 216 A.3d 307, 321 (Pa.Super. 2019) (citation omitted), **appeal denied**, 224 A.3d 364 (Pa. 2020).

Here, the record reveals that the trial court charged the jury with an instruction similar to the one given in **Padilla**, which permitted the jury to consider Appellant's alcohol and drug intake on the evening in question together with all the other evidence in the case to "determine if the Commonwealth has met its burden of proving specific intent beyond a reasonable doubt." **See** notes of testimony, 4/13/22 at 113-114. We find these instructions clearly, adequately, and accurately presented the relevant law to the jury for its consideration. Appellant's claim to the contrary, therefore, must fail.

For all the foregoing reasons, we affirm the trial court's June 17, 2022 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/30/2023