J. S20024/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| THOMAS COFFEE, | : | No. 54 EDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, August 4, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0010364-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| THOMAS COFFEE, | : | No. 56 EDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, August 4, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0010393-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| THOMAS COFFEE, | : | No. 57 EDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, August 4, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0010362-2013

J. S20024/17

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
THOMAS COFFEE, : No. 58 EDA 2016
:
Appellant :

Appeal from the Judgment of Sentence, August 4, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0010379-2013

BEFORE: BOWES, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED MAY 16, 2017**

Thomas Coffee appeals from the August 4, 2015 judgment of sentence of life imprisonment plus a consecutive aggregate term of 50 to 100 years' imprisonment imposed after a jury found him guilty of first-degree murder, four counts each of robbery and possessing an instrument of crime ("PIC"), three counts of carrying a firearm without a license, and two counts each of criminal conspiracy and robbery of a motor vehicle.[1] After careful review, we affirm the judgment of sentence.

The trial court summarized the factual background of this case as follows:

On June 7, 2013, Jose Ocana searched Craigslist.com intending to trade his dirt bike for a street motorcycle. Finding a motorcycle that he was interested in buying, Ocana contacted the seller by

---

[1] 18 Pa.C.S.A. §§ 2502(a), 3701, 907, 6106, 903, and 3702, respectively.

- 2 -

phone in order to set up a trade. Based on the voice of the individual he contacted, Ocana believed the seller to be a Hispanic male. After talking with the seller multiple times on the phone, Ocana and the seller agreed to make the trade at Ocana's home on the 3400 block of Emerald Street in Philadelphia. That evening, Ocana brought his dirt bike in front of his home and, seeing a Hispanic male walking down the street, Ocana called the seller again to confirm that the man he saw was the seller. The Hispanic male on the street answered the phone. Ocana later identified this Hispanic male as Joshua Gutierrez. Ocana also saw two black males, one of whom was [appellant], walking behind Gutierrez.

Ocana and Gutierrez met on the street, and Ocana turned to retrieve an umbrella from the trunk of his car. As Ocana retrieved the umbrella, the unidentified black male pulled a gun and pressed it against Ocana's back. [Appellant] then went through Ocana's pockets, taking Ocana's keys, wallet, and cell phone. As Gutierrez drove off with Ocana's dirt bike, the unknown black male ordered Ocana to the ground, to turn face up, and then placed the gun against Ocana's forehead. [Appellant] then got into the driver's seat of Ocana's car, while the other black male got into the passenger seat. [Appellant] and the other black male then fled the scene in Ocana's vehicle. Ocana went to a neighbor's home, where he called police.

Ocana informed police of the phone number he had used to contact Gutierrez. Detectives subsequently investigated the Craigslist ad to which Ocana responded and determined that the ad was connected to the email address joshuagutierrez772@yahoo.com and that the phone number provided in the ad belonged to Gutierrez.

On June 8, 2013, Ben Booker responded to a Craigslist ad, seeking to purchase a motorcycle. This ad was the same ad to which Ocana had responded. Booker offered to trade three legally purchased firearms for the motorcycle. Booker negotiated the

sale during a series of phone calls that he had placed to the phone number listed in the ad. The seller suggested that they meet at a location on the 4600 block of Stenton Avenue to conduct the trade. Booker drove to the meeting in his Lexus RS 300 accompanied by his cousin, where he was flagged down by Gutierrez.

While Booker and Gutierrez were talking, [appellant] approached them. [Appellant] then pulled two handguns and pointed one firearm each at Booker and his cousin. [Appellant] ordered Booker and his cousin to the ground while four other individuals approached. [Appellant] gave one firearm to Gutierrez, and the two continued to point the firearms at Booker and his cousin while the other individuals went through Booker's pockets. [Appellant] had his gun against Booker's head. [Appellant] and his associates took Booker's wallet, wedding ring, and personal firearm, and then got into Booker's Lexus and fled, along with the additional firearms and ammunition that were inside the car. Among the weapons stolen in Booker's car was a .40 caliber handgun. Booker contacted police and provided the investigating detective with a fired cartridge casing that had come from the .40 caliber handgun stolen by [appellant].

On June 10, 2013, two days after being robbed, Booker saw [appellant] on Church Street, but [appellant] fled in a van before police could arrive on the scene. Booker later identified [appellant] in a photo array on June 24, 2013.

On June 17, 2013, at approximately 9:30 a.m., Malik Bivings was walking down the 7000 block of Horrocks Street. There he encountered [appellant], who had a firearm in hand and ordered Bivings into an alley. [Appellant] directed Bivings to empty his pockets. [Appellant] took Bivings' iPhone, watch, and wallet before leaving the area. Bivings contacted the police and reported the robbery on June 21, 2013. Bivings identified [appellant] in a photo array on July 2, 2013.

On June 21, 2013, Daniel Cook, a resident of New Jersey, headed to a meeting to purchase a Yamaha Banshee ATV vehicle that was offered for sale in a Craigslist ad. Prior to that day, Cook had agreed to pay $950 and a PlayStation 3 gaming console in exchange for the ATV. [Appellant] had posted this ad using his own email address and his cell phone number. Cook and [appellant] had contacted each other by phone call and text messaging to arrange the deal. Cook arrived at the location for the trade sometime around 11 p.m. with his fiancée, Jessica Davis, and three friends who would help transport the ATV. Upon arriving at the location for the deal, Cook's fiancée parked the car and Cook exited without the other passengers, meeting with a black male who was sitting on the steps of 6704 Hollis Street wearing a white towel on his head. Cook, in possession of the PlayStation 3, and the black male walked around the corner of Walnut Street. Shortly after they went around the corner, Cook's fiancée and friends heard three gunshots. Cook's friends went around the corner to locate Cook and found him lying next to the curb a few feet away from the corner where he and the black male had gone. Cook's pockets had been turned inside out. Cook's fiancée then called the police.

Police arrived on the scene of the shooting and found Cook on the street, unresponsive with multiple gunshot wounds. Medical personnel arrived at the scene and declared Cook dead at 11:23 p.m. Cook had been shot once in the back and once in his lower right leg. Three .40 caliber fired cartridge casings were recovered at the scene. Cook's fiancé gave police the cell phone number that Cook had called to contact the seller. The police obtained the subscriber information for that number, which listed as the subscriber's address the address of [appellant] on Lukens Avenue in Willow Grove, Pennsylvania.

Sometime after midnight on June 22, 2013, [appellant] returned to his home in Willow Grove and talked to his girlfriend, telling her that his phone, from which he had just called her, had been stolen and that he needed help cancelling the phone line. Also shortly after midnight, [appellant] deleted the Craigslist ad to which Cook had responded.

Working in association with the Abington Police Department, Philadelphia Police arrived at [appellant's] home later that morning, while [appellant] was in the house. While his home was surrounded by police, [appellant] again asked his girlfriend to lie about his phone being stolen. After about 15 minutes, [appellant] exited the home and was taken into custody.

[Appellant's] cell phone records indicated that around the time of the murder, [appellant's] phone was located in the coverage area of the cell tower that included the location on Hollis Street where the murder occurred. These records further indicated that [appellant's] cell phone traveled north, away from the scene of Cook's murder, in the minutes immediately following the murder, ultimately stopping in an area that included [appellant's] home address.

While searching [appellant's] home, police recovered multiple cell phones, including the cell phone that had been stolen from Bivings on June 17, 2013. Police also located [appellant's] cell phone, recovered without a SIM card, as well as a bent SIM card that had been removed from the phone. On that phone police found pictures of the ATV from the Craigslist ad to which Cook had responded, with [appellant] astride it. Police also recovered a .40 caliber bullet that matched the type of bullets stolen from Booker and used to kill Cook. Subsequent analysis revealed that Cook was shot with the .40 caliber firearm stolen from Booker on June 8, 2013.

Trial court opinion, 3/29/16 at 2-7 (citations to notes of testimony and footnotes omitted).

Appellant was charged with a litany of crimes in connection with these incidents at four separate docket numbers. These cases were ultimately consolidated, and appellant proceeded to a jury trial on July 27, 2015. On August 4, 2015, appellant was found guilty of all charges except one count of carrying a firearm without a license.[2] That same day, the trial court sentenced appellant to life imprisonment for first-degree murder plus a consecutive aggregate term of 50 to 100 years' imprisonment for the remaining counts. On August 7, 2015, appellant filed post-sentence motions, which were denied by the trial court on November 24, 2015. This timely appeal followed on December 22, 2015. On December 23, 2015, the trial court entered an order directing appellant to file a Pa.R.A.P. 1925(b) statement within 21 days. Appellant filed a timely Rule 1925(b) statement on January 13, 2016. Thereafter, on March 29, 2016, the trial court filed a comprehensive, 15-page Rule 1925(a) opinion.

Appellant raises the following issues for our review:

---

[2] Specifically, at CP-51-CR-0010379-2013, appellant was found guilty of one count each of criminal conspiracy, robbery, robbery of a motor vehicle, and PIC. At CP-51-CR-0010364-2013, appellant was found guilty of one count each of criminal conspiracy, robbery, robbery of a motor vehicle, PIC, and carrying a firearm without a license. At CP-51-CR-0010362-2013, appellant was found guilty of robbery, carrying a firearm without a license, and PIC. Lastly, at CP-51-CR-0010393-2013, appellant was found guilty of first-degree murder, robbery, carrying a firearm without a license, and PIC.

[1.] Is [appellant] entitled to an Arrest of Judgment on the charges of Murder, Criminal Conspiracy, Robbery and related offenses, where the evidence is insufficient to establish that [appellant] was a principal, conspirator or an accomplice to the crimes in question; with regard to Murder in the First Degree specifically, the evidence is insufficient, in the alternative, where the Commonwealth could not prove that [appellant] acted with specific intent to kill nor with premeditation?

[2.] Is [appellant] entitled to a new trial on the charges of Murder in the First Degree together with Robbery, Criminal Conspiracy and all related offenses where the verdict is not supported by the greater weight of the evidence?

Appellant's brief at 3.

Preliminarily, we note that in the "Argument" section of his brief, appellant only challenges whether there was sufficient evidence to sustain his conviction for the first-degree murder of Daniel Cook. (**See** appellant's brief at 10-15.) Accordingly, we will limit our sufficiency discussion to that specific conviction. Specifically, appellant argues the evidence was insufficient to support his convictions for first-degree murder because the Commonwealth failed to prove he had a specific intent to kill Cook. (**Id.** at 10-11.) We disagree.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may

not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009), *appeal denied*, 4 A.3d 1054 (Pa. 2010) (citations omitted).

It is the element of a willful, premeditated, and deliberate intent to kill that distinguishes first-degree murder from all other types of criminal homicide. "To convict a defendant of first-degree murder, the jury must find that (1) a human being was unlawfully killed; (2) the defendant is responsible for the killing; and (3) the defendant acted with a specific intent to kill." *Commonwealth v. Montalvo*, 956 A.2d 926, 932 (Pa. 2008), *cert. denied*, 556 U.S. 1186 (2009) (citation omitted); 18 Pa.C.S.A. § 2502(a).

Viewing the evidence in the light most favorable to the Commonwealth, the verdict winner, the record supports the trial court's conclusion that there was overwhelming evidence for the jury to find that appellant shot and killed Cook on the evening of June 21, 2013. As the trial court summarized in its opinion,

> Commonwealth witness Darlene White, who knew [appellant], testified that she saw a black male sitting in front of [appellant's] old home, wearing a towel over his head, whose build and frame were similar to that of [appellant]. [(Notes of testimony, 7/28/15 at 203-209.)] That the person whom White saw was the killer was established by both Daniel

Fortunato, Cook's friend, and Jessica Davis, Cook's fiancé, who each testified that at the time of the shooting, Cook was meeting with a black male, wearing a towel on his head, who was sitting in front of [appellant's] old home. [(*Id.* at 185; notes of testimony, 7/29/15 at 89-90.]

While none of the eyewitnesses could positively identify [appellant] as the shooter, the additional physical and forensic evidence establishing [appellant's] guilt was overwhelming. First, the Craigslist ad to which Cook responded listed for the seller's contact information [appellant's] personal email address, thomascoffee6@gmail.com, and [appellant's] phone number. [(Notes of testimony, 7/30/15 at 141-143, 146.)] Second, Cook's cell phone showed that it had been used to communicate repeatedly with [appellant's] cell phone during the time leading up to the murder. [*Id.* at 75-80.)] Third, a forensic examination of [appellant's] cell phone revealed that [appellant's] phone was in the immediate area of Cook's murder at the time of the gunshots, and that the phone then rapidly traveled north immediately following the murder, ultimately stopping at the area of [appellant's] home in Willow Grove. [(Notes of testimony, 8/3/15 at 31, 33-36, 38-43.)] Fourth, a picture was found on [appellant's] phone, showing [appellant] astride the ATV that Cook was attempting to purchase. [(Notes of testimony, 7/30/15 at 103-104.)] Fifth, ballistics evidence revealed that Cook was shot and killed with one of the firearms that [appellant] stole from [Ben] Booker thirteen days before the shooting. [(Notes of testimony, 7/29/15 at 117-118, 162.)] Finally, following [appellant's] arrest, police found in [appellant's] home a round of Federal brand .40 caliber ammunition, which matched the type of ammunition that was both stolen from Booker and used against Cook. [(*Id.* at 165-166; notes of testimony, 7/30/15 at 88.)]

There was also compelling evidence establishing [appellant's] consciousness of guilt. Immediately upon his return home after the

shooting, [appellant] falsely claimed to his girlfriend, Alexis Green, that his cell phone, from which he had just called her, had been stolen earlier that day while he was playing basketball. [(Notes of testimony, 7/29/15 at 208-211; notes of testimony, 7/30/15 at 50.)] [Appellant] further requested help from his girlfriend in order to cancel the phone service. [(*Id.*)] Additionally, [appellant] deleted the Craigslist ad to which Cook had responded within an hour of the shooting. [(Notes of testimony, 7/30/15 at 143-144).] The next morning, while police had surrounded [appellant's] home, [appellant] asked his girlfriend to lie for him and tell police that his cell phone had been stolen. [(Notes of testimony, 7/29/15 at 89, 95-97; notes of testimony, 7/30/15 at 51-52.)] Police found additional evidence of [appellant's] consciousness of guilt when they recovered [appellant's] cell phone, without its SIM card, and then located the SIM card separately in a plastic bag. The SIM card had been bent in an apparent attempt to destroy it. [(Notes of testimony, 7/30/15 at 89, 95-97.)]

Trial court opinion, 3/29/16 at 11-12 (citation formatting corrected).

The record further reflects that Cook was shot multiple times, once in the leg and once in the back. (Notes of testimony, 7/29/15 at 190-193.) Commonwealth witness Dr. Edwin Lieberman, the Philadelphia medical examiner and expert in forensic pathology, testified that the gunshot to Cook's back penetrated his heart and left lung, ultimately resulting in his death. (*Id.* at 193-195.) It is well settled that "[t]he firing of a bullet in the general area in which vital organs are located can in and of itself be sufficient to prove specific intent to kill beyond a reasonable doubt." ***Commonwealth v. Manley***, 985 A.2d 256, 272 (Pa.Super. 2009), ***appeal denied***, 996 A.2d 491 (Pa. 2010) (citation omitted). Based on the

foregoing, we find that appellant possessed the requisite intent to kill Cook and that his claim that there was insufficient evidence to sustain his conviction for first-degree murder must fail.

We now turn to appellant's claim that the verdict was against the weight of the evidence. (Appellant's brief at 16.) Specifically, appellant argues the that the guilty verdict for the first-degree murder of Cook "was based on nothing more than speculation, conjecture and surmise" and that "[t]he greater weight of the evidence only would have established that there was a robbery set up and that the robbery went bad." (*Id.* at 17.) We disagree.

"An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Galvin*, 985 A.2d 783, 793 (Pa. 2009), *cert. denied*, 559 U.S. 1051 (2010) (citation omitted).

> [W]here the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Shaffer*, 40 A.3d 1250, 1253 (Pa.Super. 2012) (citation omitted).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the

verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations and emphasis omitted).

Upon review, we discern no abuse of discretion on the part of the trial court in rejecting appellant's weight claim. (*See* trial court opinion, 3/29/16 at 13.) "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa.Super. 2006) (citation omitted), *appeal denied*, 926 A.2d 972 (Pa. 2007). Here, the jury evidently found the 18 witnesses presented by the

Commonwealth at trial credible, and elected not to believe appellant's version of the events. We are precluded from reweighing the evidence and substituting our judgment for that of the fact-finder. *Clay*, 64 A.3d at 1055. Accordingly, appellant's weight claim must fail.

Appellant further contends the trial court abused its discretion in precluding him from impeaching the detective initially assigned to investigate the homicide of Cook, Detective Ronald Dove, with unrelated allegations of misconduct.[3] (Appellant's brief at 17-21.) The record reflects that appellant failed to include this specific claim in his "Statement of Question[s] Involved." (*See id.* at 3.) Accordingly, we deem it waived. *See Commonwealth v. Garland*, 63 A.3d 339, 342 (Pa.Super. 2013) (concluding that an issue not explicitly raised in appellant's statement of the questions involved is waived); Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby[]").

In any event, even if appellant had not waived this claim, he would not be entitled to relief. As recognized by the trial court, Detective Dove provided no evidence of appellant's guilt, and his testimony would not have been helpful to either party. Specifically, the trial court reasoned as follows:

---

[3] At the time of appellant's trial, Detective Dove had been terminated from the Philadelphia police force and was facing charges for allegedly helping his girlfriend flee the city after she murdered her ex-boyfriend. (*See* trial court opinion, 3/29/16 at 14; appellant's brief at 7-8, 17-21.)

> [I]t was clear that Dove, who was not called as a Commonwealth witness, had nothing to offer about the case that was not cumulative of the testimony of other witnesses, and did not state anything that was helpful to the defense. As a result, it was apparent to the [trial c]ourt that [appellant] wished to call Dove as a witness for the sole purpose of offering evidence about the charges pending against him in order to unfairly prejudice the jurors against the Commonwealth through the allegations regarding Dove's unrelated conduct.

Trial court opinion, 3/29/16 at 14-15 (citation to notes of testimony omitted).

Moreover, there is no indication that Detective Dove acted improperly in investigating appellant's case, and the only conceivable purpose in presenting Detective Dove's alleged misconduct in an unrelated matter would be to impeach his credibility. As discussed, given the overwhelming evidence in this case, appellant cannot possibly show that the proffered "evidence" of Detective Dove's alleged misconduct would have led to a different result. As such, his claim would fail.

Based on the foregoing, we find no abuse of the trial court's discretion and affirm appellant's August 4, 2015 judgment of sentence.

Judgment of sentence affirmed.

J. S20024/17

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/16/2017