J-S79038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PHILIP HUMMEL | : | |
| | : | |
| Appellant | : | No. 1742 EDA 2016 |

Appeal from the PCRA Order May 31, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0011100-2008

BEFORE:  GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED DECEMBER 19, 2017**

Appellant, Philip Hummel,[1] appeals from the order entered in the Philadelphia Court of Common Pleas, which denied his first petition brought pursuant to the Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

In its opinion, the PCRA court set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.  We add that during Appellant's direct appeal, our Supreme Court denied petition for allowance of appeal on December 31, 2012.  ***Commonwealth v. Hummel***, 619 Pa. 700, 63 A.3d 1244 (2012).

---

[1] Appellant's first name is spelled variously throughout the certified record as both "Philip" and "Phillip."

Appellant timely filed a notice of appeal on June 9, 2016, from the denial of PCRA relief. On August 29, 2016, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on September 9, 2016.

Appellant raises the following issues for our review:

WHETHER THE COURT ERRED IN DENYING [APPELLANT'S] PCRA PETITION WITHOUT AN EVIDENTIARY HEARING ON THE ISSUES RAISED IN THE AMENDED PCRA PETITION REGARDING [TRIAL] COUNSEL'S INEFFECTIVENESS.

WHETHER THE COURT ERRED IN NOT GRANTING RELIEF ON THE PCRA PETITION ALLEGING COUNSEL WAS INEFFECTIVE.

(Appellant's Brief at 8).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Sierra Thomas Street, we conclude Appellant's issues merit no relief. The PCRA court opinion comprehensively discusses and properly disposes of the questions presented. (**See** PCRA Court Opinion, filed May 9, 2017, at 11-18) (finding: **(1)** review of record reveals none of Appellant's PCRA claims entitled him to relief; evidentiary hearing served no further purpose; **(2)** regarding Appellant's claim that trial counsel was ineffective for failing to file post-sentence motion challenging weight of evidence, evidence admitted at trial firmly established Appellant's guilt; Victim provided detailed testimony that Appellant was actively involved in shooting that led to Victim's hospitalization; moments before shooting, Victim observed Appellant and

- 2 -

Co-defendant (shooter) ten feet away on sidewalk; Appellant said Victim's name aloud before shooting occurred, and Victim identified Appellant due to his "sad, unique voice"; immediately after shooting, Victim told Ms. Ayers (eyewitness): "[Appellant] shot me. As a matter of fact, he didn't do it. He got somebody else to do it"; police report states that Victim told police "possible known doer goes by Phil"; Victim also gave Appellant's name to police in ambulance on way to hospital; on day after shooting, Victim positively identified Appellant in photo array; Ms. Ayers' testimony corroborated Victim's physical descriptions of Appellant and Co-defendant, along with sequence of events; forensic evidence recovered at scene supported testimony of Victim and Ms. Ayers about events of shooting; Appellant's face was partially obscured during shooting, but Victim testified that he was able to identify Appellant based on his unique voice and their prior interactions; Ms. Ayers' inability to see Appellant's face during shooting does not upset Victim's positive identification of Appellant; rather, Ms. Ayers' physical description of Appellant corroborated Victim's description; Victim's testimony at preliminary hearing about uncertainty of Co-defendant's identity stemmed from Victim's disbelief that his friend (Co-defendant) could have been involved, as well as intimidation Victim suffered at school following shooting; Victim consistently identified Appellant as non-shooter from night of incident through trial; thus, court would have denied any post-sentence motion raising weight of evidence claim and counsel is not

ineffective for failing to file one on that ground; regarding Appellant's claim that trial counsel was ineffective for failing to file post-sentence motion challenging discretionary aspects of sentencing, court imposed sentence within guideline range and considered Appellant's confinement as consistent with protection of public, gravity of offense as it relates to impact on life of Victim, and Appellant's rehabilitative needs; court noted very serious nature of offense and that Appellant abandoned his house arrest prior to trial; Victim suffered serious injuries as result of Appellant's crimes; further, due to Appellant's abandonment of house arrest and failure to appear at trial, Appellant did not request counsel to file post-sentence motion; Appellant's claim of ineffective assistance of trial counsel for failure to file post-sentence motion to reconsider sentence fails; regarding Appellant's claim that appellate counsel was ineffective for failing to raise sufficiency of evidence challenge to Appellant's firearm conviction, sufficient evidence demonstrated Appellant's intent to promote or facilitate Co-defendant's unlicensed carrying of concealed firearm; Co-defendant's non-licensure was plainly evident because he was less than twenty-one years old at time of offense, which is minimum age to apply for license to carry firearms in Pennsylvania; Appellant's actions and statements before shooting demonstrated his intent to facilitate crime; Appellant and Co-defendant together approached Victim, and Appellant said Victim's name aloud to signal Co-defendant to begin shooting; jury had sufficient evidence to convict Appellant of firearms

charge; thus, Appellant's claim of appellate counsel's ineffectiveness merits no relief).[2]  Accordingly, we affirm based on the PCRA court opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2017

_____

[2] In his appellate brief, Appellant argues that a break during Victim's testimony at trial to allow him to take medication clouded his judgment and cast doubt on his testimony.  Appellant claims this issue affects the weight of the evidence.  Appellant's Rule 1925(b) statement, however, did not specify this claim; and the PCRA court did not address this particular argument in its opinion.  Therefore, Appellant's "medication" issue is waived.  **See Commonwealth v. Castillo**, 585 Pa. 395, 888 A.2d 775 (2005) (holding any issue not raised in Rule 1925(b) statement is deemed waived for appellate review); **Commonwealth v. Reeves**, 907 A.2d 1 (Pa.Super. 2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007) (stating Rule 1925(b) statement that is too vague for trial court to identify and address issue Appellant wishes to raise on appeal can result in waiver).

**FILED**

MAY 1 1 2017

Office of Judicial Records
Appeals/Post Trial

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
### FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : | **CP-51-CR-0011100-2008** |
| | : | |
| **v.** | : | |
| | : | **SUPERIOR COURT** |
| **PHILIP HUMMEL** | : | **NO. 1742 EDA 2016** |

### OPINION

THOMAS STREET, J.                                                        May 9, 2017

### I.   OVERVIEW AND PROCEDURAL HISTORY

The Appellant, Philip Hummel, filed a petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541 *et seq.* In his petition, the Appellant raised the issues of ineffective assistance of counsel. This court dismissed his petition as without merit and this appeal followed. On July 8, 2008, the Appellant was arrested and charged with attempted first degree murder,[1] aggravated assault,[2] criminal conspiracy,[3] and possessing a firearm without a license.[4] On May 25, 2010 through June 1, 2010, the Appellant was tried by a jury *in abstentia* and found guilty of attempted first degree murder, criminal conspiracy, and possessing a firearm without a license before Judge Thomas Dempsey. The Appellant was represented at trial by attorney Fred Harrison.

On October 8, 2010, the Appellant was sentenced to 10 to 30 years for attempted first degree murder, a concurrent 10 to 20 years for criminal conspiracy, and a consecutive 3½ to 7 years for possessing a firearm without a license. On November 4, 2010, Judge Dempsey modified



CP-51-CR-0011100-2008 Comm. v. Hummel, Philip
Opinion

7945664791

---

[1] 18 Pa.C.S. § 1102(c)
[2] 18 Pa.C.S. § 2702(a)(1)
[3] 18 Pa.C.S. § 905
[4] 18 Pa.C.S. § 6106(a)(2)

the Appellant's previous sentence on the attempted first degree murder conviction to 10 to 20 years. In sum, the Appellant was sentenced to a total of 13½ to 27 years of confinement.

On November 23, 2010, the Appellant, by and through attorney Daniel A. Pallen, filed a notice of appeal to the Superior Court of Pennsylvania. On May 31, 2011, the Appellant, by and through attorney Elayne C. Byrn, filed a concise statement of matters complained of on appeal. On March 28, 2012, the Superior Court denied the Appellant's appeal and the judgment of sentence was affirmed. On January 15, 2013, the Appellant filed a PCRA petition. On February 2, 2015, the Appellant, by and through attorney Peter A. Levin, filed an amended PCRA petition. On February 8, 2016, the Commonwealth filed a motion to dismiss the PCRA petition. On April 15, 2016, this court issued an oral notice of intent to dismiss the PCRA petition under Rule 907. On May 31, 2016, this court granted the Commonwealth's motion to dismiss the PCRA petition as without merit.

## II.    FACTUAL HISTORY

On May 25, 2010, a jury trial commenced against the Appellant and Jamel Kelly, both *in abstentia*. (N.T. 5/25/10 p. 1). The attorney for the Appellant entered a plea of not guilty to all charges on his client's behalf. (N.T. 5/25/10 p. 4). The attorney for Mr. Kelly also entered a plea of not guilty on her client's behalf. (N.T. 5/25/10 p. 5).

On direct examination, Police Officer Thomas Brown testified that he and his partner, Officer Brosious, were dispatched to 1123 South 54th Street in response to a reported shooting on the evening of June 13, 2008. (N.T. 5/25/10 pp. 31-32). Once at the location, they noticed several bullet holes in the front door of the house and discovered the complainant lying face-up on the dining room floor with visible gunshot wounds. (N.T. 5/25/10 pp. 32-33, 44). The complainant's then-girlfriend, Wyneisha Ayers, was also present in the household but unharmed. *Id.* The

2

complainant described the perpetrators to Officer Brown as two black males; one wearing a dark shirt and blue jeans and the other wearing a white shirt, blue jeans, and a white cloth over part of his head. (N.T. 5/25/10 pp. 33-35). These descriptions were included on the 75-48 incident report prepared by the Officer Brown. (N.T. 5/25/10 pp. 34-35, 37-38). On the very bottom of the 75-48 it was written, "Complainant later stated possible known doer goes by Phil." (N.T. 5/25/10 p. 35).

On cross-examination, Officer Brown testified that outside of the complainant's residence he recognized ballistics evidence of fired cartridge casings. (N.T. 5/25/10 p. 38). He asked the complainant, who remained alert and conscious, who shot him shortly after arriving at the scene. (N.T. 5/25/10 pp. 39-40). Officer Brown did not receive an answer back from the complainant before he was taken away for treatment by medics. (N.T. 5/25/10 pp. 40-41). Officer Brown remained at the scene for a couple hours and the notation at the very bottom of the 75-48 was made during this time. (N.T. 5/25/10 pp. 41-42).

On direct examination, Wyneisha Ayers testified that she was present with the complainant on the evening of the shooting. (N.T. 5/25/10 p. 52). Ms. Ayers explained that she was sitting outside of the complainant's house when two young men walked up and one of them verbally alerted the other of the complainant's presence. (N.T. 5/25/10 p. 53). She was then pushed into the house by the complainant as four bullets were fired at them. (N.T. 5/25/10 p. 54). Ms. Ayers described the two men as wearing white towels over their faces that covered some of their eyes and the sides of their faces, but exposed their faces from below their eyebrows. (N.T. 5/25/10 pp. 55-56). Ms. Ayers described the men as wearing white T-shirts and dark blue jeans. (N.T. 5/25/10 p. 55). She described one of the men as "real chubby and fat looking" while the other was comparatively smaller. (N.T. 5/25/10 p. 57). The smaller man had alerted the larger man of the

3

complainant's presence before the shooting and the larger man responded in a sarcastic voice, "Oh, yeah?" (N.T. 5/25/10 p. 58). Only a few seconds passed before the larger man began shooting at the complainant. (N.T. 5/25/10 p. 59). After having been shot, the complainant escaped into his house and told Ms. Ayers, "Phil shot me. As a matter of fact, he didn't do it. He got somebody else to do it." (N.T. 5/25/10 pp. 64-65).

On cross-examination, Ms. Ayers testified that she and the complainant had been sitting on the steps of the house for a least two (2) hours before the shooting. (N.T. 5/25/10 p. 66). At about 9:45 p.m., she first saw the perpetrators from approximately fifteen (15) feet away at the nearest corner from the house. (N.T. 5/25/10 pp 67-69). Approximately fifteen (15) seconds later, the men shot at the complainant as she was pushed into the house. (N.T. 5/25/10 p. 71). She clarified that she did not tell the police that night that the complainant said, "Phil shot me. As a matter of fact, he didn't do it. He got somebody else to do it." (N.T. 5/25/10 pp. 75-76). On redirect examination, Ms. Ayers testified that on the night of the shooting she told the police that the larger man was wearing a dark shirt. (N.T. 5/25/10 pp. 77-78).

On direct examination, the complainant testified that he was shot on the steps of his grandmother's house on the evening of June 13th. (N.T. 5/25/10 pp. 79-80). He stated that the two men walked up and approached him, said his name aloud, and then fired four shots at him. (N.T. 5/25/10 p. 81). The complainant knew both of the men by name and he identified the Appellant as the non-shooter. (N.T. 5/25/10 pp. 81, 84). He stated that he heard four gun shots go off as he pushed Ms. Ayers into his grandmother's house. *Id.* The complainant then entered the house and collapsed from the pain of his gunshot wounds. (N.T. 5/25/10 p. 85). He was eventually taken to the Children's Hospital of Philadelphia for treatment, where he remained for two and a half (2 ½) weeks. (N.T. 5/25/10 p. 86).

4

The complainant testified that Detective William Farrell visited him at the hospital the next day at approximately 1 p.m. and showed him a photo array that displayed eight individuals. *Id.* Detective Farrell asked the complainant whether he recognized anybody that was involved in the shooting. (N.T. 5/25/10 p. 87). The complainant identified the Appellant as the non-shooter by circling his picture on the photo array. *Id.* Approximately three days later, Detective Farrell came back to the hospital to take a statement from the complainant. (N.T. 5/25/10 p. 88). The complainant once more identified the Appellant as the non-shooter in the incident. (N.T. 5/25/10 p. 89). Later on July 17th, the complainant identified Mr. Kelly as the shooter to the police after previously telling them that he did not know the shooter. (N.T. 5/25/10 pp. 88-90). The complainant cited his disbelief that Mr. Kelly, as a longtime close friend, would have shot him despite recognizing him since the time of the shooting. *Id.* The complainant reiterated this as one reason he failed to positively identify Mr. Kelly as the shooter at the preliminary hearing on September 4, 2008. (N.T. 5/25/10 pp. 92-94). Another reason was an instance of witness intimidation by an associate of the Appellant that took place at the complainant's school. (N.T. 5/25/10 pp. 100-102).

On cross-examination, the complainant testified that he initially lied about not knowing the shooter when asked by Detective Farrell because he was in disbelief. (N.T. 5/26/10 pp. 8-9). The disbelief and witness intimidation led the complainant to testify at the preliminary hearing that he was not certain that Mr. Kelly was the shooter. (N.T. 5/26/10 pp. 12-14). The complainant testified that before the shooting he was on the steps outside of his grandmother's house for approximately ten (10) to fifteen (15) minutes. (N.T. 5/26/10 p. 39). He was not aware of the men's presence until the Appellant said the complainant's name to Mr. Kelly from about ten (10) feet away on the sidewalk at this time. (N.T. 5/26/10 p. 42-43, 48). The complainant described

5

the Appellant as having a towel wrapped around his head, sunglasses on his face, and a blue bandana around his mouth and nose. (N.T. 5/26/10 p. 45). The complainant testified that he was able to immediately identify the Appellant as the non-shooter because of his "sad, unique voice." (N.T. 5/26/10 pp. 45-46). Lighting was provided from the neighbor's light pole and light that came from the complainant's grandmother's house. (N.T. 5/26/10 p.47). The complainant identified the Appellant as the non-shooter to Detective Farrell while in an ambulance on the way to the hospital after the incident. (N.T. 5/26/10 pp. 55-56).

On direct examination, Detective William McCroty of the Southwest Detective Division testified that he was assigned to the Special Investigation Unit that also responded to the incident that evening. (N.T. 5/26/10 pp. 97-98). Detective McCroty arrived at the scene at approximately 10 p.m. and logged in with the uniformed officers that were present. (N.T. 5/26/10 pp. 98, 115). He proceeded to observe where the evidence was in reference to the crime and made a sketch of the crime scene with his findings. (N.T. 5/26/10 pp. 99-100). As part of processing the crime scene, Detective McGroty took several photographs. (N.T. 5/26/10 p. 100). These photographs displayed such things as the fired cartridge casings and their location at the scene as well as damage caused to the house. (N.T. 5/26/10 pp. 105). Detective McGroty collected the cartridge casings and other items and properly entered them into evidence at the Philadelphia Police Department. (N.T. 5/26/10 pp. 107-109). On cross-examination, Detective McGroty testified that the grouping of the cartridge casings indicated that the shooter remained largely still as he fired the gun. (N.T. 5/26/10 p. 124). Detective McGroty was the first detective to arrive at the scene of the crime, although it had been already taped off by the uniformed officers that arrived earlier. (N.T. 5/26/10 pp. 125-126). He remained at the scene of the crime for about thirty (30) minutes to one (1) hour. (N.T. 5/26/10 p. 131).

On direct examination, Police Officer Norman Defields of the Firearms Identification Unit was entered as an expert by the court in the areas of ballistics, firearms, and tool mark examination. (N.T. 5/26/10 pp. 137-141). Officer Defields examined the evidence collected by Detective McCroty and concluded that the shooter utilized a semiautomatic gun with a .380 caliber. (N.T. 5/26/10 pp. 141-145). Officer Defields further concluded that all three of the fired cartridge casings found at the scene were fired from the same semiautomatic firearm. (N.T. 5/26/10 pp. 145-147). On cross-examination, Officer Defields testified that a live cartridge can get ejected from a semiautomatic firearm. (N.T. 5/26/10 p. 154). The insufficient amount of striations on the cartridge left Officer Defields unable to conclude whether the live cartridge came from the same firearm as the fired cartridges. (N.T. 5/6/10 p. 155). None of the cartridges were examined for fingerprints. (N.T. 5/26/10 pp. 155-156). Officer Defields explained that fingerprints can only be recovered from fired cartridges approximately four to five percent of the time due to the microsecond the cartridge is ignited at a temperature of almost two thousand degrees. (N.T. 5/26/10 pp. 156-157).

On direct examination, Detective William Farrell of the Southwest Detectives Division, Special Investigation Unit, testified that he had been an officer in the department for 23 years, with 12 years spent as a detective at Southwest. (N.T. 5/6/10 p. 169). On June 13, 2008, Detective Farrell was made aware of the shooting at 1123 South 54th Street and became the assigned lead investigator. *Id.* As the lead investigator, Detective Farrell acted as a coordinator and went to the Hospital of the University of Pennsylvania in an attempt to question the complainant. (N.T. 5/6/10 p. 170). Detective Farrell had other detectives go the scene to process it, including Detective McGroty, while others stayed back at headquarters in case any other witnesses were found. *Id.* After the scene was processed, Detective Farrell was provided with a crime scene log from the

7

shooting scene. (N.T. 5/26/10 pp. 170-171). Detective Farrell testified that on June 14, 2008, he showed the complainant a photo array and asked him whether or not he could identify an individual involved in the shooting. (N.T. 5/26/10 p. 172-173). The complainant pointed to the photo of the Appellant and then circled and signed his name, including the date as well. (N.T. 5/26/10 p. 174).

On direct examination, Detective Farrell testified that he first spoke to the complainant on June 13th between approximately 9:45 p.m. and midnight. (N.T. 5/26/10 p. 202). The descriptive information given to Detective Farrell was of two black males; one wearing a dark shirt and blue jeans and the other wearing a white shirt, blue jeans, and a white cloth over part of his head. (N.T. 5/26/10 pp. 202-203). Detective Farrell also had a copy of the 75-48 that included, "Complainant later stated possible known doer. Goes by Phil." (N.T. 5/26/10 p. 204). Detective Farrell received no corroboration for that statement from any other witness than the complainant. *Id.*

In his two interviews with the complainant, Detective Farrell did not receive any information about a white towel or other object on the heads of the Appellant and Mr. Kelly. (N.T. 5/26/10 p. 209). No weapons were recovered at the scene of the shooting nor after the arrest of the Appellant and Mr. Kelly. (N.T. 5/26/10 pp. 210-212). No neighborhood survey was conducted after the shooting. (N.T. 5/26/10 pp. 212-213). Detective Farrell stated that he created the photo array including the Appellant based upon the descriptive information previously provided to the police by the complainant. (N.T. 5/26/10 p. 215). Detective Farrell explained that he did not seek a search warrant of the Appellant's mother's residence, where the Appellant resided at the time of the shooting, because the Appellant had become a runaway. (N.T. 5/26/10 p. 217). Detective Farrell's stated his arrest warrant for the Appellant was premised entirely upon the positive identification given by the complainant to the photo array. (N.T. 5/26/10 p. 221).

8

On redirect examination, Detective Farrell testified that the statement given by Ms. Ayers on the night of the shooting provided descriptions of the two perpetrators. (N.T. 5/26/10 p. 222). The Appellant was described by Ms. Ayers as a skinnier black male with a light complexion, about 16 years old, 5'6" to 5'8" in height, and wearing a white T-shirt and blue jeans. *Id.* Mr. Kelly was described as a heavier black male with a dark complexion, 17-18 years old, 5'6" to 5'8" in height, facial hair, and wearing a dark shirt and jeans. (N.T. 5/26/10 p. 223). On recross-examination, Detective Farrell testified that he did not follow-up in his investigation to the notation "they kept calling him Phil" in regards to who comprised "they." (N.T. 5/26/10 p. 224). On further redirect examination, Detective Farrell testified that "they" could have indicated the complainant and the shooter. (N.T. 5/26/10 p. 225). On further recross-examination, Detective Farrell testified that "they" could have included any number of people. *Id.* On further redirect examination, Detective Farrell testified that out of the hundreds of shootings he had investigated in southwest Philadelphia, it is rare that people in the neighborhood cooperate or provide information. (N.T. 5/26/10 pp. 226-227).

## III. ISSUES

In the Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal, the Appellant identifies the following issues:

1. The court was in error in denying the Appellant's PCRA without an evidentiary hearing.

2. The court was in error in denying the amended PCRA filed by PCRA counsel on February 2, 2015 and developed in the amended PCRA. These issues in the amended PCRA were the following:

> 1. Counsel was ineffective for failing to file post sentence motions that the verdict was against the weight of evidence.

9

2. Counsel was ineffective for failing to file a motion to reconsider sentence.

3. Appellate counsel was ineffective in representation.

## IV. <u>STANDARD OF REVIEW</u>

In PCRA proceedings, an appellate court's scope of review is limited by the parameters of the PCRA. *Commonwealth v. Pitts*, 981 A.2d 875 (Pa. 2009). Since most PCRA appeals involve mixed questions of fact and law, the court must determine whether the post-conviction court's findings were supported by the record and whether the court's order is otherwise free of legal error. *Commonwealth v. Lesko*, 15 A.3d 345 (Pa. 2011). In evaluating the decision of the lower court on a petition for post-conviction relief, a court's scope of review is limited to the findings of the post-conviction court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. *Commonwealth v. Weatherill*, 24 A.3d 435 (Pa. 2011). It is an appellant's burden to persuade the reviewing court that the PCRA court erred and relief is due. *Commonwealth v. Bennett*, 19 A.3d 541, 543 (Pa. Super. 2011).

In general, in reviewing the propriety of an order granting or denying relief under the PCRA, great deference is granted to the factual findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record. *Commonwealth v. Green*, 14 A.3d 114 (Pa. Super. 2011). Accordingly, where there is support in the record for a post-conviction relief court's credibility determinations, the reviewing court is bound by those determinations. *Commonwealth v. Chmiel*, 30 A.3d 1111 (Pa. 2011). Where the questions presented on review of the denial or grant of post-conviction relief involve questions of law, the standard of review is de novo. *Commonwealth v. Fahy*, 598 Pa. 584, 959 A.2d 312 (Pa. 2008).

10

## V.   DISCUSSION

### A.   This Court Did Not Err In Denying The Appellant's PCRA Without An Evidentiary Hearing

For the first issue on appeal, the Appellant contends that this court erred in denying the Appellant's PCRA without an evidentiary hearing. This court disagrees.

It is well settled that PCRA petitioners are not automatically entitled to evidentiary hearings. *Commonwealth v. Walker*, 36 A.3d 1, 17 (Pa. 2011). An evidentiary hearing is only required when a petitioner presents a genuine issue of material fact. *Id.* A PCRA court may utilize its discretion in determining whether any of the petitioner's claims warrant a hearing. *Id.* Absent an abuse of discretion, a court's decision to deny a claim without a hearing will not be reversed. *Id.* In *Walker*, the Pennsylvania Supreme Court affirmed the PCRA court's dismissal of an appellant's PCRA Petition without an evidentiary hearing after finding that the appellant's claims did not warrant any relief. *Id.*

Here, a review of the evidence of record reveals none of the Appellant's claims entitled him to relief; no further purpose would have been served by a hearing. As will be discussed further below, the Appellant's claims that trial counsel was ineffective for failing to file post-sentence motions that the verdict was against the weight of evidence, that trial counsel was ineffective for failing to file a motion to reconsider sentence, and that appellate counsel was ineffective in representation, are all without merit.

### B.   Trial Counsel Was Not Ineffective For Failing To File Post-Sentence Motions That The Verdict Was Against The Weight Of The Evidence

Second, the Appellant contends that trial counsel was ineffective for failing to file post-sentence motions that the verdict was against the weight of the evidence. This court disagrees.

11

The test for determining ineffectiveness of counsel is the same under both the United States and Pennsylvania Constitutions. *Commonwealth v. Williams,* 936 A.2d 12, 19 (Pa. 2007). To obtain relief on a claim of ineffective assistance of counsel, an appellant must show (1) that there is merit to the underlying claim; (2) that counsel had no reasonable basis for their course of conduct; and (3) that the ineffectiveness resulted in prejudice to the appellant. *Commonwealth v. Rega,* 933 A.2d 997, 1018 (Pa. 2007). The failure to satisfy any one of the prongs requires rejection of the claim. *Commonwealth v. Pierce,* 786 A.2d 203, 213 (Pa. 2001). The burden of proving ineffectiveness rests with the appellant, *Commonwealth v. Wilson,* 672 A.2d 293, 298 (Pa. 1996), and trial counsel will not be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Pursell,* 724 A.2d 293, 304 (Pa. 1999).

Concerning a post-sentence motion that the verdict was against the weight of the evidence, it is well-established that a new trial may only be granted by a trial court where the verdict was so contrary to the weight of the evidence it would "shock one's sense of justice." *Commonwealth v. Rossetti,* 863 A.2d 1185, 1191 (Pa. Super. 2004) (quoting *Commonwealth v. Hunter,* 554 A.2d 550, 555) (Pa. Super. 1989)). A new trial should not be granted because of a mere conflict in the testimony or because a judge on the same facts would have arrived at a different conclusion. *Commonwealth v. Widmer,* 744 A.2d 745, 751-752 (Pa. 2000). Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* at 752. Moreover, credibility determinations are solely within the province of the fact-finder, and an appellate court may not reweigh the evidence and substitute its judgment for that of the finder of fact. *Commonwealth v. Taylor,* 63 A.3d 327 (Pa. Super. 2013) (quoting *Commonwealth v. Shaffer,* 40 A.3d 1250, 1253 (Pa. Super. 2012)). In considering a claim that the trial court erred in

12

refusing to find that a verdict was against the weight of the evidence, "appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Taylor*, 63 A.3d at 327 (quoting *Shaffer*, 40 A.3d at 1253).

Here, the Appellant cannot demonstrate that he was prejudiced by trial counsel's failure to file a motion that the verdict was against the weight of the evidence. The evidence admitted at trial firmly established that the appellant was guilty of attempted first degree murder, criminal conspiracy, and possession of a firearm without a license. The complainant provided detailed testimony that the Appellant was actively involved in the shooting that led to his hospitalization for several serious bullet wounds. Moments prior to the shooting, the complainant observed the Appellant and the shooter on the sidewalk from only ten (10) feet away. (N.T 5/26/10 p. 43, 48). The Appellant said the complainant's name aloud prior to the shooting, which allowed the complainant to immediately identify him due to his "sad, unique voice." (N.T. 5/25/10 p. 81, 5/26/10 pp. 45-46). The complainant also told Ms. Ayers immediately after having been shot, "Phil shot me. As a matter of fact, he didn't do it. He got somebody else to do it." (N.T. 5/25/10 pp. 64-65). The 75-38 prepared by Officer Brown at the scene included, "Complainant later stated possible known doer goes by Phil." (N.T. 5/25/10 p. 35). Further, the complainant said the Appellant's name to the police in the ambulance on his way to the hospital after the shooting. (N.T. 5/26/10 pp. 55-56). When Detective Farrell presented the complainant with a photo array of eight individuals the next day, the complainant positively identified the Appellant. (N.T. 5/26/10 p. 87). Ms. Ayers' testimony also corroborated the complainant's physical description of the Appellant and shooter, along with the sequence of events. (N.T. 5/25/10 pp. 52-78). Moreover, the forensic evidence recovered at the scene supported the testimony of the complainant and Ms. Ayers on the events of the shooting. (N.T. 5/25/10 pp. 38, 97-109).

13

Furthermore, the Appellant's contentions to the weight of the evidence in his amended PCRA petition does not disrupt the jury's finding of guilt. While the Appellant's face was partially obscured during the shooting, the complainant testified that he was able to accurately identify the Appellant based upon his unique voice and their prior interactions. (N.T. 5/25/10 p. 81, 5/26/10 pp. 14, 45-46). As it pertains to the testimony of Ms. Ayers, her inability to see the Appellant's face during the shooting does not disrupt the positive identification made by the complainant. Rather, Ms. Ayers' physical description of the Appellant corroborates the complainant's description of the shooting.

Regarding the complainant being allowed to stop his cross-examination so that he could receive medication from his mother, an appellant must demonstrate that they were actually prejudiced by a trial judge's sequestration order before any relief may be warranted. *Commonwealth v. Stevenson*, 894 A.2d 759 (Pa. Super. 2006). Absent a clear abuse of discretion, an appellate court will not reverse a trial judge's decision to grant or deny sequestration. *Id.* In this case, the court allowed the complainant a brief recess from his testimony to receive necessary medication from his mother as a sheriff watched over them the entire time. After the complainant received this medication, the sheriff affirmed that the complainant took two pills and that nothing regarding the case was spoken about between the complainant and his mother. (N.T. 5/26/10 p. 31). Under these attentive circumstances, the Appellant is unable to demonstrate that any actual prejudice occurred from the court's limited denial of sequestration.

Lastly, the complainant's testimony at the preliminary hearing regarding his uncertainty about the identity of the shooter does not upset his identification of the Appellant as the non-shooter. The complainant's uncertainty on the shooter stemmed from the disbelief that his friend Mr. Kelly could have been involved in the shooting, as well as the intimidation he suffered at his

14

school following the shooting. (N.T. 5/25/10 pp. 92-94, 100-102). As it concerns the Appellant, the complainant consistently identified him as the non-shooter from the night of the shooting all the way to trial. (N.T. 5/25/10 pp. 35, 81, 84, 94).

Therefore, there was compelling evidence to support the jury's conclusion that the Appellant was an active and willing participant in the shooting of the complainant. As a result, the court would have properly denied any post-sentence motion by the Appellant based on the weight of the evidence. Accordingly, the record establishes that the Appellant's claim of trial counsel ineffectiveness for failing to file a post-sentence motion that the verdict was against the weight of the evidence is without merit.

## C. Trial Counsel Was Not Ineffective For Failing To File A Motion To Reconsider Sentence

Third, the Appellant contends that trial counsel was ineffective for failing to file a motion to reconsider sentence. This court disagrees.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of that discretion." *Commonwealth v. Anderson*, 552 A.2d 1064, 1072 (Pa. Super. 1988). Where the court imposes a sentence within the guideline range recommended by the Pennsylvania Commission on Sentencing, appellate courts may not substitute their judgment for that of the sentencing court but rather must limit their review to determine whether the trial court's sentence is "clearly unreasonable." *Commonwealth v. Dodge*, 957 A.2d 1198 (Pa. Super. 2008). To succeed on this issue on appeal, an appellant must establish that had counsel submitted a post-sentence motion challenging their sentence, it "would have led to a different and more favorable outcome at...sentencing." *Commonwealth v. Reaves*, 923 A.2d 1119, 1131-1132 (Pa. 2007). Also, due to his voluntary absence from trial, the Appellant is unable to allege in his amended PCRA petition

15

that he requested that counsel file a post-sentence motion challenging the discretionary aspects of his sentence. Counsel simply cannot be ineffective for failing to file a post-sentence motion that an appellant never requested. *Commonwealth v. Velasquez*, 563 A.2d 1273, 1275 (Pa. Super 1989).

Here, the Appellant cannot demonstrate that he was prejudiced by trial counsel's failure to challenge his sentence. The court's sentencing of the Appellant was within the guideline range and considered the Appellant's confinement as consistent with the protection of the public, the gravity of the offense as it related to the impact on the life of the victim, and the rehabilitative needs of the Appellant. *See* Pennsylvania Sentencing Code, 42 Pa. C.S. § 9701 et. seq. Consistent with the protection of the public, the court noted the very serious nature of the offense and fact that the Appellant abandoned his house arrest prior to his trial *in abstentia*. (N.T. 10/8/10 p. 10, 12). Considering the gravity of the offense as it related to the impact on the victim, the court noted the serious injuries the victim suffered as a result. (N.T. 10/8/10 p. 11). Once a young man in good physical shape, the victim was left with a limp and the need for consistent medication to control his attention deficit issues and anger. *Id.* The court expressly noted the hurt and pain that was evident in the victim as he testified over the course of two days at trial. *Id.* As it pertained to rehabilitative needs of the Appellant, the court examined his prior criminal history and the serious nature of the crimes he was convicted. (N.T. 10/8/10 pp. 11-13).

In sum, the Appellant was ultimately sentenced to a total of 13½ to 27 years of confinement. The court had originally sentenced the Appellant to a total of 13½ to 37 years of confinement, but later modified its sentence on the attempted first degree murder from 10 to 30 years to 10 to 20 years. There is no indication that had the Appellant submitted a post-sentence motion challenging their sentence, it would have led to a more favorable outcome. The court

16

sentenced the Appellant within the guideline range and considered the factors provided for by the Pennsylvania Sentencing Code. Furthermore, it must also be noted that the Appellant never requested such a post-sentence motion, a consequence of abandoning house arrest and never appearing for trial. Accordingly, the record establishes that the Appellant's claim of trial counsel ineffectiveness for failing to file a post-sentence motion to reconsider sentence is without merit.

## D.     Appellate Counsel Was Not Ineffective In Representation

Finally, the Appellant contends that appellate counsel was ineffective in representation. This court disagrees.

In his amended PCRA petition, the Appellant alleges that appellate counsel was ineffective for failing to raise a sufficiency of the evidence claim for the possession of a firearm without a license conviction. As previously discussed, to obtain relief on a claim of ineffective assistance of counsel, an appellant must show (1) that there is merit to the underlying claim; (2) that counsel had no reasonable basis for their course of conduct; and (3) that the ineffectiveness resulted in prejudice to the appellant. *See, e.g., Rega,* 933 A.2d at 1018. In reviewing a sufficiency of the evidence claim, an appellate court must view all the evidence admitted at trial in the light most favorable to the verdict winner and determine whether there was sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Tucker,* 143 A.3d 955 (Pa. Super. 2016). An appellate court may not weigh the evidence and substitute its judgment for that of the fact-finder. *Id.* Had appellate counsel raised a sufficiency of the evidence claim for possession of a firearm without a license, no merit would have been found to the underlying claim.

To be guilty of possessing a firearm without a license, a person must be found to have carried a firearm in any vehicle or carried a firearm concealed on or about their person, except in

17

their place of abode or fixed place of business, without a valid and lawfully issued license. *See* 18 Pa.C.S.A. § 6106(a). For possessory convictions resulting under a theory of accomplice liability, an offense-specific analysis of a defendant's intent and conduct is required. *Commonwealth v. Knox*, 105 A.3d 1194 (Pa. 2014). In *Knox*, the Pennsylvania Supreme Court analyzed a defendant's "accountability for the illegal possession of a firearm by another, under accomplice-liability theory." *Id.* at 1195. In that case, the underlying offense was possession of a firearm without a license. *Id.* The prosecution of the defendant was premised on him being an accomplice to his brother's possession of a firearm when his brother was not licensed to do so. The Court held that the proper inquiry was whether the defendant, "[acted] with the intent to promote or facilitate his brother's unlicensed carrying of a concealed firearm, [soliciting] his brother to commit such[an] offense." *Id.* at 1197.

Here, there was sufficient evidence presented at trial that the Appellant intended to promote or facilitate Mr. Kelly's unlicensed carrying of a concealed firearm. First, the issue of Mr. Kelly's non-licensure was plainly evident from him being a teenager at the time of the offense. An individual must be at least 21 years old to apply for a license to carry firearms in Pennsylvania. *See* 18 Pa.C.S.A. § 6109. Second, the Appellant's actions and statements prior to the shooting demonstrate an intent to facilitate the crime. The Appellant and Mr. Kelly together approached the complainant and it was the Appellant that said the complainant's name aloud to signal to Mr. Kelly to begin shooting. (N.T. 5/25/10 p. 81). In its judgment as the fact-finder, the jury had sufficient information to find the Appellant guilty of possession of a firearm without a license. As a result, if a sufficiency of the evidence claim had been raised on appeal, no merit would have been found to the underlying claim. Accordingly, Appellant's claim of appellate counsel ineffectiveness was properly dismissed.

18

## VI. CONCLUSION

For all of these reasons, this court's decision should be affirmed.

BY THE COURT:

SIERRA THOMAS STREET, J.

Dated: May 9, 2017

19